## OSTERNECK ET AL. *v.* ERNST & WHINNEY

No. 87–1201.   Argued November 29, 1988—Decided February 21, 1989

KENNEDY, J., delivered the opinion for a unanimous Court.

*Laurie Webb Daniel* argued the cause for petitioners. With her on the briefs were *Harold T. Daniel, Jr., Keith M. Wiener,* and *Paul Webb, Jr.*

*Gordon Lee Garrett, Jr.,* argued the cause for respondent. With him on the brief was *William B. B. Smith.*

JUSTICE KENNEDY delivered the opinion of the Court.

Federal Rule of Appellate Procedure 4(a)(4) provides that if any party files a timely motion "under Rule 59 [of the Federal Rules of Civil Procedure] to alter or amend the judgment," a notice of appeal filed before the disposition of that motion "shall have no effect." In this case, we decide whether a motion for discretionary prejudgment interest filed after the entry of judgment constitutes a Rule 59 motion to alter or amend the judgment and renders ineffective any notice of appeal filed before a ruling on that motion. If we decide the question in the affirmative, we are asked to decide whether this case nevertheless falls within the so-called "unique circumstances" exception to the timely appeal requirement announced in *Thompson* v. *INS,* 375 U. S. 384 (1964) *(per curiam).*

I

The history of this case is complex but can be stated in a summary way. In September 1969, the Cavalier Bag Com-

pany merged into E. T. Barwick Industries, Inc. (Barwick Industries). The Osternecks, owners of Cavalier and petitioners here, approved the merger and exchanged their stock in Cavalier for stock in Barwick Industries. In approving the transaction, petitioners allegedly relied on financial statements of Barwick Industries prepared by Ernst & Whinney, an independent certified public accounting firm and the respondent here.

Sometime later, petitioners concluded that Barwick Industries' financial statements for two years preceding the merger misrepresented the company's actual financial condition. In 1975, petitioners filed this action alleging violations of §§ 10(b) and 20 of the Securities Exchange Act of 1934, ch. 404, 48 Stat. 891, 899, as amended, 15 U. S. C. §§ 78j(b), 78t (1982 ed. and Supp. IV), Rule 10b–5 thereunder, 17 CFR § 240.10b–5 (1975), and Georgia common law. Petitioners named as defendants, among others, Barwick Industries, respondent Ernst & Whinney, and certain directors and officers of Barwick Industries (E. T. Barwick, B. A. Talley, and M. E. Kellar).

After nearly 10 years of pretrial proceedings, the case finally went to trial in 1984. The jury returned a verdict against Barwick Industries, M. E. Kellar, and B. A. Talley in the amount of $2,632,234 in compensatory damages for violations of the federal securities laws and Georgia common law. The jury found in favor of E. T. Barwick and respondent Ernst & Whinney.

Immediately after the jury verdict was announced, petitioners moved orally for prejudgment interest on the damages assessed against Barwick Industries, M. E. Kellar, and B. A. Talley. The District Judge, not wishing to hear argument on petitioners' motion at that point, directed petitioners to submit their motion for prejudgment interest in writing within 10 days. He stated:

"The judgment will be entered on this particular verdict as soon as possible, then if prejudgment interest is

granted it will be—the judgment can be amended." App. 5.

The judgment was filed and entered on the same day, January 30, 1985. *Id.*, at 6–7. On February 11, 1985, petitioners, as directed, filed a written motion for prejudgment interest. *Id.*, at 8–9.

During March 1985, the various parties filed notices of appeal and cross-appeal challenging the January 30 judgment. Of particular importance here, on March 1, 1985, while their motion for prejudgment interest was still pending, petitioners filed a notice of appeal from the January 30, 1985, judgment in favor of E. T. Barwick and respondent Ernst & Whinney. *Id.*, at 34.

The District Court did not rule on petitioners' motion for prejudgment interest until July 1, 1985. On that date, the court entered an order stating that the final judgment shall be "AMENDED" to reflect an "additional award of [$945,512.85 in] prejudgment interest on the federal securities claim." *Id.*, at 44. On July 9, 1985, the District Court filed a document captioned "AMENDED JUDGMENT," stating that the January 30, 1985, judgment "is hereby amended by adding thereto . . . [the] award of prejudgment interest," but shall "remain the same in every other respect." *Id.*, at 45. After the amended judgment had been entered, petitioners filed one additional notice of appeal on July 31, 1985, captioned as a cross-appeal against M. E. Kellar, B. A. Talley, E. T. Barwick, and Barwick Industries. *Id.*, at 46–47. But, and this is the vital fact for purposes of this case, the notice failed to include respondent Ernst & Whinney as a party to the appeal.

The Court of Appeals dismissed petitioners' appeal as to Ernst & Whinney for lack of jurisdiction, finding that no effective notice had been filed. *Osterneck* v. *E. T. Barwick Industries, Inc.*, 825 F. 2d 1521 (CA11 1987). The Court of Appeals concluded that petitioners' February 11, 1985, mo-

tion for prejudgment interest was a motion to alter or amend the judgment under Rule 59(e), which rendered ineffective under Federal Rule of Appellate Procedure 4(a)(4) the March 1, 1985, notice of appeal filed before the disposition of the prejudgment interest motion.   825 F. 2d, at 1525–1527.[1] The Court of Appeals rejected petitioners' contention, based on our decision in *White* v. *New Hampshire Dept. of Employment Security*, 455 U. S. 445 (1982), that their motion for prejudgment interest was not a motion to alter or amend the judgment under Rule 59(e) because it merely addressed an issue collateral to the main cause of action.   825 F. 2d, at 1526.   The Court of Appeals also rejected petitioners' contention that our decision in *Thompson* v. *INS*, 375 U. S. 384 (1964) *(per curiam)*, required that it hear their appeal because they had relied upon several actions of the District Court which indicated that the January 30, 1985, judgment was final and appealable notwithstanding the pending motion for prejudgment interest.   825 F. 2d, at 1527–1528.

Petitioners sought review here, and we granted certiorari, 486 U. S. 1042 (1988), to resolve a conflict in the Courts of Appeals over whether a motion for prejudgment interest filed after the entry of judgment constitutes a Rule 59(e) motion to alter or amend the judgment.   Cf. *Jenkins* v. *Whittaker Corp.*, 785 F. 2d 720 (CA9 1986).   We also agreed to consider, if necessary, whether the Court of Appeals erred in not entertaining petitioners' appeal under the reasoning of *Thompson, supra.*   We now affirm.

## II

Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to "alter or amend the judgment" shall be served within 10 days of the entry of judgment.   Rule 4(a)(4) of the

---

[1] The Court of Appeals also found that petitioners' July 31, 1985, notice of cross-appeal was ineffective as to the judgment in favor of respondent because respondent was not named in that notice.   825 F. 2d, at 1528–1529.   Petitioners have not sought review of that ruling in this Court.

Federal Rules of Appellate Procedure provides that a notice of appeal filed while a timely Rule 59(e) motion is pending has no effect. Together, these Rules work to implement the finality requirement of 28 U. S. C. § 1291 by preventing the filing of an effective notice of appeal until the District Court has had an opportunity to dispose of all motions that seek to amend or alter what otherwise might appear to be a final judgment.

A

*White* v. *New Hampshire Dept. of Employment Security, supra,* at 451, set the general framework for determining whether a postjudgment motion constitutes a Rule 59(e) motion to alter or amend the judgment. In that case, we held that a request for attorney's fees under 42 U. S. C. § 1988 was not a Rule 59(e) motion. We stated in *White* that a postjudgment motion will be considered a Rule 59(e) motion where it involves "reconsideration of matters properly encompassed in a decision on the merits." 455 U. S., at 451, citing *Browder* v. *Director, Illinois Dept. of Corrections,* 434 U. S. 257 (1978). We concluded that a request for attorney's fees did not fit this description because it raised legal issues "collateral to the main cause of action," 455 U. S., at 451, requiring an inquiry that was wholly "separate from the decision on the merits," *id.,* at 451–452. We noted, moreover, that because attorney's fees under § 1988 are not considered compensation for the injury giving rise to the cause of action, their award was "uniquely separable" from the underlying merits of the controversy. *Id.,* at 452.

We revisited the question of what constitutes a Rule 59(e) motion last Term. In *Buchanan* v. *Stanships, Inc.,* 485 U. S. 265 (1988), we considered whether a motion for the allowance of costs under Federal Rule of Civil Procedure 54(d) was a motion to alter or amend the judgment. In concluding that it was not, we relied on the fact that Federal Rule of Civil Procedure 58 draws a "sharp distinction" between a district court's judgment on the merits and an award of costs.

485 U. S., at 268. Moreover, we observed that, as with the attorney's fees in *White*, a motion for costs filed under Rule 54(d) "raises issues wholly collateral to the judgment in the main cause of action." 485 U. S., at 268.

In *Budinich* v. *Becton Dickinson & Co.*, 486 U. S. 196 (1988), the issue was not whether a particular kind of motion constitutes a Rule 59(e) motion, but rather the related question whether a judgment is final under 28 U. S. C. § 1291 when a motion for attorney's fees remains to be resolved. We acknowledged in *Budinich* that our earlier decision in *White*, holding that a request for attorney's fees under § 1988 was not a Rule 59(e) motion, "all but" answered the finality question. We went on to reiterate that, as a general matter, a request for attorney's fees is not part of the merits of the underlying action because such fees are not part of the compensation for the plaintiff's injury but traditionally have been regarded as an element of costs awarded to the prevailing party. 486 U. S., at 199–201.

Under these precedents, the Court of Appeals was correct to conclude that a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e). First, we have repeatedly stated that prejudgment interest "is an element of [plaintiff's] complete compensation." *West Virginia* v. *United States*, 479 U. S. 305, 310, and n. 2 (1987); see *General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648, 655–656, and n. 10 (1983). Thus, unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment, see *Budinich*, *supra*, at 200–201, prejudgment interest traditionally has been considered part of the compensation due plaintiff.

Second, unlike a request for attorney's fees or a motion for costs, a motion for discretionary prejudgment interest does not "rais[e] issues wholly collateral to the judgment in the main cause of action," *Buchanan*, *supra*, at 268; see *White*, 455 U. S., at 451, nor does it require an inquiry

wholly "separate from the decision on the merits," *id.*, at 451–452. In deciding if and how much prejudgment interest should be granted, a district court must examine—or in the case of a postjudgment motion, reexamine—matters encompassed within the merits of the underlying action. For example, in a federal securities action such as this case, a district court will consider a number of factors, including whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.[2] See *Norte & Co.* v. *Huffines*, 416 F. 2d 1189, 1191–1192 (CA2 1969), cert. denied *sub nom. Muscat* v. *Norte & Co.*, 397 U. S. 989 (1970); *City National Bank* v. *American Commonwealth Financial Corp.*, 608 F. Supp. 941, 943 (WDNC 1985); *Fox* v. *Kane-Miller Corp.*, 398 F. Supp. 609, 651 (Md. 1975); see also generally *Blau* v. *Lehman*, 368 U. S. 403, 414 (1962) ("[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness"). These considerations are intertwined in a significant way with the merits of the plaintiff's primary case as well as the extent of his damages. Thus, we conclude that a postjudgment motion for discretionary prejudgment interest involves the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply.[3]

---

[2] We do not intend here to specify what factors a district court must consider when deciding under federal law whether to grant prejudgment interest. We offer this list of factors, taken from lower court cases, merely to demonstrate that the inquiry involves issues intertwined to a significant extent with the merits of the underlying controversy.

[3] We do not believe the result should be different where prejudgment interest is available as a matter of right. It could be argued that where a party is entitled to prejudgment interest as a matter of right, a reexamination of issues relevant to the underlying merits is not necessary, and there-

Our conclusion that a postjudgment motion for discretionary prejudgment interest is a Rule 59(e) motion also helps further the important goal of avoiding piecemeal appellate review of judgments. Cf. *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263, 265 (1982) ("[T]he policy of Congress embodied in [28 U. S. C. § 1291] is inimical to piecemeal appellate review of trial court decisions"). Because Federal Rule of Appellate Procedure 4(a)(4) renders ineffective any notice of appeal filed while a Rule 59(e) motion is pending, the decision whether a particular pending motion falls under Rule 59(e) will of necessity determine whether an otherwise final judgment is appealable. By preventing appellate review before a postjudgment motion for prejudgment interest is resolved, the rule we adopt today gives added assurance that an appellate court will have the benefit of the district court's plenary findings with regard to factual and legal issues subsumed in the decision to grant discretionary prejudgment interest, such as the wrongfulness of the defendant's conduct and the plaintiff's full damages, as well as other matters of equity bearing on the merits of the litigation. Such information may well be useful to a complete understanding of the district court's findings on liability and damages. We do not anticipate that our holding will result in undue delays in the entry of a final judgment. Any evidence relating to the

---

fore the motion should be deemed collateral in the sense we have used that term. However, mandatory prejudgment interest, no less than discretionary prejudgment interest, serves to "remedy the injury giving rise to the [underlying] action," *Budinich* v. *Becton Dickinson & Co.*, 486 U. S. 196, 200 (1988), and in that sense is part of the merits of the district court's decision. Moreover, as we said last Term in *Budinich:* "[W]hat is of importance here is not preservation of conceptual consistency in the status of a particular [type of motion] as 'merits' or 'nonmerits,' but rather preservation of operational consistency and predictability in the overall application of the [finality requirement] of § 1291." *Ibid.* "Courts and litigants are best served by the bright-line rule, which accords with traditional understanding," *ibid.*, that a motion for prejudgment interest implicates the merits of the district court's judgment.

question of prejudgment interest should be available at the time that the other issues in the case are tried, and the district court should be able to dispose of a motion for prejudgment interest within a reasonable time after the entry of verdict.

### III

Petitioners contend that even if their March 1, 1985, notice of appeal was rendered ineffective by the filing of their motion for prejudgment interest, the Court of Appeals nevertheless should have heard their appeal based on the rationale of *Thompson* v. *INS*, 375 U. S. 384 (1964). In that case, the petitioner filed with the District Court a motion for a new trial within 10 days of receiving notice of the entry of judgment, but 12 days after the judgment was entered. Although this motion was in fact untimely, the District Court specifically declared that it had been filed "'in ample time.'" *Id.*, at 385. In reliance on this statement, the petitioner in *Thompson* did not file an appeal from the District Court's original judgment, but rather filed a timely appeal from the later denial of his motion for a new trial. Because it found that petitioner's motion for a new trial was not timely filed, the Court of Appeals dismissed his appeal. In light of these "unique circumstances," we reversed. *Id.*, at 387. Because petitioner had filed his notice of appeal in reliance on the specific statement of the District Court that his motion for a new trial was timely, we felt that fairness required that the Court of Appeals excuse his untimely appeal. See *ibid.*

Petitioners contend that the rationale of *Thompson* is applicable here because certain statements made by the District Court, as well as certain actions taken by the District Court, the District Court Clerk, and the Court of Appeals, led them to believe that their notice of appeal was timely. After reviewing these claims, the Court of Appeals declined to apply the *Thompson* exception, concluding:

> "At no time has the district court or this court ever affirmatively represented to the Osternecks that their ap-

peal was timely filed, nor did the Osternecks ever seek such assurance from either court." 825 F. 2d, at 1528.

After reviewing the record, we conclude that the Court of Appeals was correct in declining to apply our reasoning in *Thompson* to excuse petitioners' failure to file an effective notice of appeal. By its terms, *Thompson* applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done. That is not the case here.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*