**In the Matter of CHICAGO, MILWAU-
KEE, ST. PAUL & PACIFIC RAIL-
ROAD COMPANY, Debtor.**

**Appeal of UNITED STATES of America.**

**No. 91–1158.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1991.

Decided April 13, 1992.

Gary R. Allen, David I. Pincus, Teresa T. Milton (argued), and Benjamin Norris, Dept. of Justice, Tax Div. Appellate Section, Washington, D.C., for the U.S. appellant.

Daniel R. Murray, Randall E. Mehrberg, Jerold S. Solovy, and Barry Sullivan (argued), Jenner & Block, Chicago, Ill., for CMC Real Estate Corporation, appellee.

James B. Burns, Edward R. Gower, Keck, Mahin & Cate; Daniel R. Murray, Randall E. Mehrberg, Jerold S. Solovy, Barry Sullivan, Terrence J. Truax, Jenner & Block, Chicago, Ill.; Charles Stark, I.C.C., Office of the Gen. Counsel, Washington, D.C.; Milton H. Gray, Altheimer & Gray; James T. Malysiak, Freeman, Freeman & Salzman; Terry F. Moritz, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz; Marvin F. Metge, F. Rausch, Gorham, Metge, Bowman & Hourigan, Chicago, Ill.; William G. Mahoney, Highsaw, Mahoney & Clarke, Washington, D.C.; Carlton G. Salmons, Austin & Gaudineer, Des Moines, Iowa; J.S. Thiel, Dept. of Transp., Madison, Wis.; Patrick J. McPartland, Minneapolis, Minn.; Lynn A. Goldstein, First Nat. Bank of Chicago; and Harold L. Kaplan, Mayer, Brown & Platt, Chicago, Ill., for Chicago, Milwaukee, St. Paul and Pacific R. Co., debtor.

Before CUDAHY, POSNER and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

After reorganization, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company (the Milwaukee Road [1]) owed the federal government $3.9 million in back taxes and interest. It tried to pay in September 1985, but the Government refused to acknowledge the offer. In August 1990, the Government finally asked for its money. The Milwaukee Road paid up immediately. Now the Government wants interest on the

---

1. For simplicity's sake, we use Milwaukee Road throughout to refer to the pre-petition company, to the debtor in bankruptcy, to the bankruptcy trustee and to the company after reorganization.

debt for the period between September 1985 and August 1990. The District Court denied the request, and we affirm.

## I.

The Milwaukee Road filed a voluntary petition for reorganization under the bankruptcy laws on December 19, 1977. The reorganization was extraordinarily successful, and after selling off large portions of the company's assets, the trustee was able to propose a Plan of Reorganization (the Plan) in May 1985 under which all creditors would be paid in full, with interest.

The United States Government was among the creditors. The Milwaukee Road owed the Government approximately $2.5 million in unpaid, pre-petition Railroad Retirement Act taxes. The Plan classified this tax claim as a Class C, general, unsecured claim. Section 5.3 of the Plan specified the manner in which interest would be computed:

> Interest and related charges will be calculated at the rates provided by the Plan from a date a Claim is liquidated until (1) the Distribution Date, in the case of Claims finally allowed, settled or adjudicated prior to the applicable Distribution Date, or (2) the date of payment, in the case of other Claims.

Trustee's Modified Plan of Reorganization § 5.3 at 5 (July 12, 1985) (Plan).

The Milwaukee Road originally proposed to pay interest to Class C creditors at 5%. On July 12, 1985, the District Court approved the proposed plan, but increased the interest rate payable to Class C creditors— to 7.5% for the period between the filing of the petition and February 19, 1985 and to 8.5% thereafter. Order No. 832 ¶ 22 at 12 (July 12, 1985); Plan § 5.4 at 5. The court also found, however, that the Government should be treated like all other Class C creditors and denied the Government's motion to have interest on its claim calculated at the statutory interest rate provided for tax deficiencies. Order No. 832 ¶ 23 at 13; *see also* 26 U.S.C. §§ 6621 & 6622 (Supp. 1986). The Government appealed from the confirmation of the Plan, and on September 28, 1987, we affirmed. *In re Chicago, M., St. P. & P. R.R.*, 830 F.2d 758, 765 (7th Cir.1987) (*IRS Appeal*).

While the Government's appeal was pending, the reorganization continued. The Milwaukee Road prepared checks and sent verification forms to all Class C creditors in early September 1985. The verification form notified the creditor of the amount that the Milwaukee Road proposed to pay. In the Government's case, this amounted to approximately $3.9 million— $2.5 million plus interest from the filing of the Government's claim to September 30, 1985, the Distribution Date for Class C claims. Upon execution and return of a verification form, the Milwaukee Road sent the corresponding check. Most Class C creditors were paid by September 30, but as far as anyone can tell, the Government may have placed its verification form in a circular file. Certainly it did not return the form, and the form is not in the record. As a consequence, the Milwaukee Road did not send the Government's check.

In November 1985, the Milwaukee Road moved to limit all unpaid claims to the amounts that it acknowledged on its records. The Milwaukee Road served this motion on the Government. Thereafter, the court and the Milwaukee Road sent the Government four more notices that the amount of its claim would be limited to $3.9 million unless it responded. At oral argument, counsel for the Government frankly conceded that she had no idea why the Government failed to respond to any of these notices. Finally, in April 1986, the court entered an order limiting the Milwaukee Road's liability to the Government to $3.9 million, the amount the Milwaukee Road offered to pay in September 1985.

Time passed. In September 1987, the Government lost its appeal from the confirmation of the Plan. More time passed. Finally, in August 1990, the Government asked for its money. The Milwaukee Road immediately paid $3.9 million. Two months later, on November 7, 1990, the Government filed a motion in the District Court seeking interest from September 1985 to

August 1990.[2]

The Milwaukee Road did not receive notice of the Government's motion in time to respond or to attend the hearing, but Judge Lindberg was able to dispose of the Government's motion in summary fashion. The Plan, he noted, provides that interest will cease to accrue on the Distribution Date for all claims that are "finally settled, allowed or adjudicated" before that date. Memorandum Opinion and Order at 1 (November 15, 1990). "Finally adjudicated," he held, means the same thing as "final judgment" under Fed.R.App.P. 6(a). *Id.* at 2. In other words, a finally adjudicated claim under the Plan is one that has been settled by a final, appealable decision. Thus the Government's claim was finally adjudicated when the Plan was confirmed by a final, appealable order on July 12, 1985,[3] and interest ceased to accrue on September 30, 1985. *Id.*

## II.

▍ The gist of the Government's argument is that its claim against the Milwaukee Road was not "finally allowed, settled or adjudicated" until we decided its appeal in 1987. Therefore, it argues, it is entitled to interest until the date of payment under section 5.3(2) of the Plan. Under the district court's interpretation, the Government argues, it "is forced to make a five-year interest-free loan of $2.4 million to a solvent debtor." Gov't Br. at 11. Further, it objects to the debtor's reliance on the district court's order of April 1986 limiting the Government's claim. That order, the Government observes, was entered while its claim for more interest was pending before this court; accordingly, the district court had no jurisdiction to enter the order in the first place.

Before turning to the interpretation of the Plan, we will dispose of the Government's supporting arguments. First, the Government was not "forced" to lend money to the debtor. The taxpayers have certainly suffered, and the Milwaukee Road has enjoyed free use of the funds, but the "loan" appears to be due to nothing more than governmental inaction. At oral argument, the Government's counsel speculated that the Government did not claim its check in September 1985 because signing the verification form would have waived its right to appeal. But there is no way to know whether counsel's speculation has any basis in fact, nor did the Government present this argument to the district court. Even if we were to accept the Government's conjecture, it has still failed to account for its failure to seek relief from the waiver requirement or to account for the three-year delay after our decision on its appeal.

Second, while we agree that the district court was without jurisdiction to limit the Milwaukee Road's tax debt to $3.9 million in April 1986, *see Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982), neither the Milwaukee Road nor the district court relied on that order in the proceedings below—the Milwaukee Road was not there, and the court's opinion does not once refer to the April 1986 order.

The Government's main argument has more merit. A common-sense reading of the Plan might lead one to think that "finally allowed, settled or adjudicated" means the point at which the Milwaukee Road and the Government were no longer

---

**2.** The Government also filed a motion requesting that the interest be put into an escrow fund because "under the terms of the plan, all creditors must be paid by November 24, 1990, or they forever lose their right to recover on their claims from the debtor." Motion to Have Disputed Funds Put in Escrow at 2 (November 7, 1990). The Milwaukee Road argues that as November 24 has come and gone, we should deny the Government's appeal on that basis. Given our disposition of the appeal, we need not reach the issue.

**3.** The opinion of the district court contains an apparently inadvertent error. The opinion states that final adjudication, "at the latest," took place on November 12, 1985, the date of the Final Decree. Memorandum Opinion and Order at 2 (November 15, 1990). Since the Distribution Date for Class C claims occurred on September 30, 1985, the November 12 date does not support the court's conclusion. Nonetheless, the confirmation order on July 12, 1985 was certainly a final adjudication within the court's meaning. Accordingly, we attach no significance to this slip of the pen.

carrying on their controversy. That point, arguably, did not occur until September 1987, when the Government's appeal was denied. But before launching into a close reading of the Plan, we must settle on a standard of review.

A district court presiding over a railroad reorganization sits as a court of equity, and review of its orders is "extremely limited" and "similar to the abuse of discretion standard of review." *IRS Appeal,* 830 F.2d at 761 (citations and internal quotations omitted). On the other hand, we have reversed a district court for using its equitable powers to modify a plan of reorganization after confirmation. *In re Chicago, M., St. P. & P.R.R.,* 891 F.2d 159, 163 (7th Cir.1989); *cf. id.* at 164 (Cudahy, J., dissenting). In this case, however, we consider the interpretation, not the modification, of a confirmed reorganization plan.

Before confirmation, a reorganization court must approve the terms of a proposed plan to ensure that they are "fair and equitable." 11 U.S.C. § 205(e) (1976) (repealed 1978). Thus when a reorganization court interprets a confirmed plan of reorganization, it interprets words on which it has already passed judgment. Under these circumstances, we believe that full deference to the court's decision is in order. *Commission of Dept. of Public Utilities v. New York, N.H. & H.R. Co.,* 178 F.2d 559, 563–64 (2d Cir.1949), *cert. denied,* 339 U.S. 943, 70 S.Ct. 796, 94 L.Ed. 1359 (1950); *see also In re Ranch House of Orange-Brevard, Inc.,* 773 F.2d 1166, 1168 (11th Cir.1985) (deferring to bankruptcy court's interpretation of confirmed plan).

Having settled the standard of review, it suffices to say that the district court's interpretation of the Plan is neither unreasonable nor implausible. When applied to a dispute over money, a final judgment in the jurisdictional sense connotes a claim that has been calculated precisely (or easily can be) and has been approved by a judge. *Cf. Osterneck v. Ernst & Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (court must determine amount of prejudgment interest before

award of damages may be appealed). At confirmation, the Plan appropriately could provide that debts capable of calculation and approved by the court should be disbursed on the Distribution Date, whether or not anyone planned to appeal. Given our deferential standard of review, this court was particularly likely to affirm the provisions of the Plan, and there was no reason that creditors should not enjoy the use of their funds (and bear the risk that market interest rates would fall below the rate provided in the Plan) during the pendency of an appeal. Moreover, if creditors entitled to payment under this distribution scheme failed to come forward, there was also no reason to provide interest for periods attributable to their delay. Accordingly, it is quite reasonable to think that "finally allowed, settled or adjudicated" in the Plan has the same meaning as "final judgment."

The Milwaukee Road presses another, plausible interpretation of the Plan in support of the district court's decision. Under this interpretation, "Claim" in section 5.3 refers only to the principal amount of the Government's claim, the $2.5 million that was never in dispute. *Compare* Plan § 1.4 (defining "Claim") *with* Plan § 1.1 (defining "Allowable Claim"). But we need not reach this argument, because the district court's opinion is a reasonable interpretation of the Plan. Under our deferential standard of review, reasonable is reason enough for the decision of the district court to be

Affirmed.