320 F.3d 590
 Carl LAWRENCE, Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA; William J. McCarty, Chairman of Teamsters National
 Freight, General President; Ron Carey, Successor, Chairman of Teamsters National Freight, General President; Dennis C. Skelton, National Freight Director, Co-Chairman Teamsters National Freight Industrial Negotiating Committee; James A. McCall, Associate General Counsel; Steven Waitman, President of Local 908; Teamsters Local Union No. 908, Defendants-Appellees.
 No. 01-3981.
 United States Court of Appeals, Sixth Circuit.
 Argued: January 29, 2003.
 Decided and Filed: February 18, 2003.
 
 Terry L. Hord (argued and briefed), Ada, OH, for Plaintiff-Appellant.
 Frederick G. Cloppert, Jr. (argued and briefed), Cloppert, Latanick, Sauter & Washburn, Columbus, OH, for International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, William J. McCarty, Ron Carey, Dennis C. Skelton and James A. McCall.
 John R. Doll (briefed), Diana S. Brown (argued and briefed), Logothetis, Pence & Doll, Dayton, OH, for Steven Waitman.
 Before: NELSON and CLAY, Circuit Judges; HAYNES, District Judge.*
 OPINION
 CLAY, Circuit Judge.
 
 
 1
 Plaintiff Carl Lawrence, appeals the denial of his request for relief from judgment pursuant to Fed.R.Civ.P. 60(b), following an order of summary judgment against Lawrence in his breach of duty of fair representation claim arising under 29 U.S.C. § 185. We AFFIRM.
 
 BACKGROUND
 
 2
 Lawrence worked as a truck driver for Duff Truck Line, Inc., and its successor, O.K. Trucking Company ("O.K."), from 1957 through 1991. In early 1992, O.K. was sold to Wintz Parcel Drivers ("Wintz"). Lawrence v. Int'l Bhd. of Teamsters I, 205 F.3d 1340, 2000 WL 92271, 2000 U.S.App. LEXIS 1288, at *2-3 (6th Cir. Jan. 21, 2000) (unpublished). The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ("IBT") and its Local 908 were the exclusive bargaining agents for employees of O.K. Trucking. Id. at *1, 2000 U.S.App. LEXIS at *3. In January of 1992, Lawrence began filing grievances with Local 908 alleging that O.K. failed to follow the collective bargaining agreement ("CBA"). Id. Lawrence also claimed that Wintz discharged him in violation of the CBA, which remained in force after Wintz purchased O.K. Id. Lawrence demanded that Defendants process the grievances on his behalf and secure his reinstatement along with back pay and benefits. Id. In his complaint, Lawrence claimed Defendants led him to believe they were processing his grievances, when in reality they took no action. Id. at * 1, 2000 U.S.App. LEXIS at *4.
 
 
 3
 On December 31, 1997, Lawrence filed a complaint in the Court of Common Pleas, in Allen County, Ohio, alleging that the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (IBT), some of its individual officers, and Steven Waitman, President of Teamsters Local Union No. 908 mishandled eleven grievances Lawrence filed against his employer. Defendants removed the case to federal court. On July 13, 1998, the district court granted Defendants' motions to dismiss. Lawrence filed a timely appeal on August 11, 1998. This Court affirmed the lower court's ruling as to four of the grievances, but reversed as to the remaining seven. See Lawrence I, 2000 WL 92271, 2000 U.S. LEXIS 1288.
 
 
 4
 On July 21, 2000, the district court ordered that it would not accept hard copies of pleadings unless provided for in its Electronic Policies and Procedures Manual. Thereafter, the parties conducted discovery and Defendants moved for summary judgment, which the court granted on March 12, 2001.
 
 
 5
 Evidently, Lawrence's counsel had never filed papers electronically prior to this litigation. After the district court granted Defendants summary judgment on March 12, 2001, Lawrence's counsel contacted the court to find out when he needed to electronically file his notice of appeal. Counsel claims that when he asked whether April 13, 2001 was the last day to file an appeal, a clerk agreed.
 
 
 6
 A party must file a notice of appeal within thirty days of entry of the judgment being appealed. Fed. R.App. P. 4(a)(1). In calculating the thirty days, the day on which the judgment was entered is excluded, but the last day is included unless it is a Saturday, Sunday, or legal holiday. Fed. R.App. P. 26(a). Lawrence had thirty days after March 12, or until April 11, 2001. April 11, 2001 was a Wednesday. Lawrence filed his appeal on April 13, 2001.
 
 
 7
 The records of the Court of Appeals reflect receipt of that appeal on May 31, 2001. On June 20, 2001, with the appeal still pending, Lawrence moved the district court for relief from judgment pursuant to Fed.R.Civ.P. 60(b).[1] The court denied the 60(b) request on August 16, 2001. On September 12, 2001, Lawrence timely appealed that denial.
 
 
 8
 We then dismissed the first appeal as untimely on September 19, 2001. Lawrence v. Int'l Bhd. of Teamsters, No. 01-3529, slip op. (6th Cir. Sept. 19, 2001) (order dismissing case as untimely filed).
 
 DISCUSSION
 
 9
 This Court will not reverse a district court's denial of a motion for relief from judgment pursuant to 60(b) unless it finds an abuse of discretion. Jinks v. AlliedSignal, Inc., 250 F.3d 381 (6th Cir. 2001) (citing Thompson v. Am. Home Assurance Co., 95 F.3d 429, 432-33 (6th Cir. 1996)). We find no abuse of discretion here.
 
 
 10
 A. The "Unique Circumstances" Doctrine Defined.
 
 
 11
 In Thompson v. INS, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), the plaintiff filed an untimely motion for a new trial. Id. at 386, 84 S.Ct. 397. The defendant did not object to the untimely motion and the trial court asserted that the plaintiff had made the motion "in ample time." Id. After the court ultimately denied the post-trial motion, the plaintiff appealed. Id.
 
 
 12
 At the appellate level, the defendant argued that the motion for a new trial was untimely and thus did not toll the time for filing the notice of appeal. Id. at 385, 84 S.Ct. 397. The Seventh Circuit agreed and dismissed the appeal as untimely. Id. The Supreme Court reversed, ruling that it was the district court's error in finding the motion for a new trial timely and the plaintiff's justifiable reliance on that finding that caused the plaintiff to appeal outside the time limit. Id. at 387, 84 S.Ct. 397. Under these "unique circumstances," the Supreme Court remanded the case to the Seventh Circuit with instructions to consider the merits of the plaintiff's appeal. Id.
 
 
 13
 Lawrence now argues that this Court, following Thompson, should reverse the district court's denial of the motion for relief from judgment, which would allow the lower court to enter a new judgment and, correspondingly, to grant Lawrence additional time to perfect his appeal.
 
 
 14
 B. The "Unique Circumstances" Rule is Inapplicable.
 
 
 15
 Thompson is distinguishable. The Supreme Court subsequently explained that "[b]y its terms, Thompson applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." Osterneck v. Ernst & Whinney, 489 U.S. 169, 179, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).
 
 
 16
 With one exception, every circuit to have considered the issue has found that the phrase "judicial officer" in Osterneck refers only to judges. See, e.g., Rezzonico v. H & R Block, Inc., 182 F.3d 144, 152 (2d Cir.1999) ("[S]tatements by a member of the clerk's office staff are not official judicial assurances that qualify as unique circumstances."); Moore v. S.C. Labor Bd., 100 F.3d 162, 164 (D.C.Cir.1996) ("This case does not qualify for application of the unique circumstances doctrine because although the statements made by the clerk's office staff may constitute specific assurances, they cannot fairly be characterized as official judicial action."); United States v. Heller, 957 F.2d 26, 29 (1st Cir.1992) ("We understand the term `judicial officer' in this context to mean a judge, not an employee in the office of the clerk."); Sonicraft, Inc. v. NLRB, 814 F.2d 385, 387 (7th Cir.1987) (reasoning that "judicial officers" must mean judges because "subordinate employees of the judiciary have no authority to waive congressional limitations on judicial power").
 
 
 17
 In contrast to the weight of the authority, the Eleventh Circuit has "decided that the unique circumstances doctrine may apply where the appellant is lulled by assurances from the clerk's office instead of the district court itself." Hollins v. Dep't of Corr., 191 F.3d 1324, 1328 (11th Cir.1999). In Hollins, counsel relied on a clerk's office electronic docket system to determine, incorrectly, that the court had not yet filed a final order. Id.
 
 
 18
 Even assuming Hollins did not reflect an extreme minority position, there are four reasons to firmly conclude that the "unique circumstances" doctrine does not apply here. First, albeit in an unpublished opinion, we have already rejected Hollins. See Frazier v. United States, No. 97-6338, 2000 WL 658072 (6th Cir. May 9, 2000) (unpublished per curiam). In Frazier, we dismissed an attempt by counsel to blame the tardiness of his client's habeas petition on a clerk who allegedly provided the attorney with improper filing information. Id. at *1. As we explained, "this court has not subscribed to the Eleventh Circuit's lenient interpretation of the `unique circumstances' exception." Id.
 
 
 19
 Second, prior to Osterneck, we interpreted Thompson's holding this way: "[An] appeal would be considered timely because the appellant had done something which would have extended the time for appeal if properly done, and relied on the district court's statement that it was done properly." Denley v. Shearson/Am. Express, Inc., 733 F.2d 39, 42 (6th Cir.1984) (emphasis added). Although one could attempt to interpret "district court" very broadly, to do so would strain the meaning of "district court." Clerks and court personnel work for the district court, they are not the district court.
 
 
 20
 Third, the Supreme Court has only applied the "unique circumstances" doctrine in four cases. See Osterneck, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146; Wolfsohn v. Hankin, 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964); Thompson, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404; Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962). Each of these cases involved mistaken court rulings or orders rather than poor advice from a court clerk. See Osterneck, 489 U.S. at 178, 109 S.Ct. 987; Wolfsohn, 376 U.S. at 203-04, 84 S.Ct. 699; Thompson, 375 U.S. at 385-87, 84 S.Ct. 397; Harris Truck Lines, 371 U.S. at 216-17, 83 S.Ct. 283.
 
 
 21
 Fourth, limiting the phrase "judicial officer" to judges makes sense because "a formal order or ruling (1) generates the highest level of justifiable reliance, and (2) raises virtually no possibility of evidentiary problems for appellate courts faced with applying the exception." Moore, 100 F.3d at 164. Thus, policy and precedent each point strongly against the lenient "unique circumstances" rule that Lawrence would have this Court adopt.
 
 CONCLUSION
 
 22
 Since the "unique circumstances" rule does not apply, we decline to hear Lawrence's appeal inasmuch as Lawrence filed his notice of appeal two days late. We AFFIRM the district court's denial of Lawrence's request for relief from judgment.
 
 
 
 Notes:
 
 
 *
 The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 This tracks the procedure this Court outlined inLewis v. Alexander, 987 F.2d 392, 395 (6th Cir.1993), that attorneys should follow when they discover after filing an appeal that the appeal is untimely.