[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12861
Non-Argument Calendar

_____

D.C. Docket No. 0:19-cv-61141-BB


MARILYN ADAMS,

Plaintiff - Appellant,

versus

PARADISE CRUISE LINE OPERATOR LTD.,
PARADISE CRUISE LINE HOLDINGS, LLC,

Defendants - Appellees,

BAHAMAS PARADISE CRUISE LINE, LLC,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 16, 2021)

Before WILSON, ROSENBAUM and MARCUS, Circuit Judges.

PER CURIAM:

After taking a shower onboard a cruise ship, Marilyn Adams slipped and fell on the bathroom floor, suffering a serious injury. She sued the ship owner, Bahamas Paradise Cruise Line Operator, Ltd., Inc. ("Paradise Cruise"), alleging that Paradise Cruise failed to maintain and inspect the bathroom to be free from dangerous conditions, and failed to warn Adams of these conditions. The district court granted summary judgment in favor of Paradise Cruise. After careful review, we affirm.

The relevant facts are these. On June 15, 2018, the date of her fall, Adams and her husband, James Adams, boarded Paradise Cruise's ship, the Grand Celebration. The ship's crew had inspected and cleaned the stateroom the morning Adams and her husband boarded the ship. When Adams first went into the bathroom, she found it in an "acceptable" condition. The bathroom measured 3 feet by 6.5 feet and had a "1.25 inch threshold dividing the shower area from the rest of the bathroom." The entrance to the bathroom displayed a warning sign providing, "'WATCH YOUR STEP.' BATHROOM FLOOR SLIPPERY WHEN WET."

According to Adams's deposition, about 20 to 30 minutes after entering the stateroom, Adams decided to take a shower. She placed a towel on the floor outside the shower before showering for approximately 12 to 15 minutes. When she finished her shower, the air was "cloudy" and "steamy." She stepped out of the shower without drying off, slipping and falling on her first step. She did not remember if she stepped onto the towel that she had placed on the floor. Adams described the

2

water that had accumulated on the floor as a "puddle," "pool," or "lake," and testified that it was about an inch or two deep. After Adams fell, her husband observed "at least an inch" of water in the bathroom, deep enough so that the towel Adams placed on the bathroom floor was "floating" on the water. Adams's husband also noticed an area of corrosion -- what Adams described as "rust and rot" -- "near the doorway entering into the shower stall" and pointed it out to Adams. The rust was "fairly deep," and the corroded area appeared to be "four or five square inches" or four by two inches. Adams's husband took photographs of this area, but neither Adams nor her husband ran the shower following the incident to test the source of the water on the bathroom floor. Adams further testified that she did not observe any water traveling through the corroded area. As a result of her fall, Adams hit her head and sustained a fracture in her left ankle that required surgery.

In May 2019, Adams brought this maritime tort action in the United States District Court for the Southern District of Florida, alleging that Paradise Cruise committed nine "negligent acts or omissions." In its summary judgment order, the district court grouped these allegations into three categories: (1) failure to maintain a bathroom free from dangerous conditions; (2) failure to inspect the bathroom for dangerous conditions and timely correct such conditions; and (3) failure to warn Adams of dangerous conditions in the bathroom. Addressing the first two categories, the district court found that there was no evidence of a dangerous

3

condition. The court noted that it could end its analysis there, but nevertheless addressed Adams's argument that the dangerous condition that caused her fall was the excessive pooling of water, finding that Paradise Cruise did not have notice of the condition. The court also determined that Paradise Cruise did not have a duty to warn about this condition because it was open and obvious. The district court then granted summary judgment in favor of Paradise Cruise. This timely appeal follows.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Looney v. Moore, 886 F.3d 1058, 1062 (11th Cir. 2018). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a factual dispute is genuine, we must consider whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016) (quotation omitted).

Because Adams's injury "occurred on a ship sailing in navigable waters," federal maritime law governs this action. Carroll v. Carnival Corp., 955 F.3d 1260, 1263–64 (11th Cir. 2020). "In analyzing a maritime tort case, we rely on general principles of negligence law." Id. at 1264 (quotation omitted). To prevail on her maritime negligence claims, therefore, Adams must prove that (1) Paradise Cruise had a duty to protect her from a particular injury; (2) Paradise Cruise breached that

4

duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm.  Id.  At issue here, in order of Adams's arguments, are the causation prong -- i.e., whether Paradise Cruise's alleged breach of its duty to protect her from any dangerous conditions by not fixing the corroded area on the bathroom doorframe actually or proximately caused her injury -- and the duty prong -- i.e., whether Paradise Cruise had notice of the alleged excessive pooling of water and, thus, had a duty to protect her from that condition.

For starters, we are unpersuaded that Adams has shown a genuine issue of disputed fact about whether the corroded area on the bathroom doorframe constituted a dangerous condition causing Adams's slip and fall.[1]  "For factual issues to be considered genuine, they must have a real basis in the record."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quotation omitted).  "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

Here, Adams has presented no evidence suggesting that the rust spot was the conduit for the water on the bathroom floor.  Adams alleges that her personal observations and those of her husband about the location of rusty area, the photographs Mr. Adams took of the area, and a Paradise Cruise work order

---

[1] The district court also found that Adams presented no evidence that the bathroom flooring was made from "unsafe or extraordinarily slippery material."  Adams does not challenge this finding on appeal.

completed about three months after Adams's fall "document the existence of the relevant dangerous condition," and, thus, that the water that pooled on the floor must have come through the corroded doorframe.  But Adams did not run the shower after her fall to test how the water could have pooled on the bathroom floor, and, she never said she saw any water traveling through the rusty area.  Nor did her husband testify that he ever saw any water traveling through that area.  Moreover, according to the photographs in the record, the rust spot in question appears to not be in the shower; rather, it is at the bottom of an adjacent doorframe leading into the stateroom, and Adams does not provide any evidence indicating that that area, leading to outside the bathroom, is the source of the leak that caused her fall inside the bathroom.  As for the Paradise Cruise work order Adams cites, it merely indicates that the rust spot was painted several months after her fall because it was rusty and "need[ed] [a] paint touch up," with no indication that the painting was done to repair a leak.

In addition, Paradise Cruise points us to a declaration from its expert in engineering and human factors, Dr. Tyler Kress, that contradicts Adams's unsupported allegation that water leaked from the corroded area.  Dr. Kress inspected the stateroom bathroom and shower in December 2019.  He tested the dynamic coefficient of friction ("DCOF") of the bathroom flooring -- "[i]n practical terms . . . an indicator of how slippery a surface is" -- and found the floor met the standard for "[f]loors suitable for interior spaces that are expected to be walked on

when wet with water." See also Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1279 (11th Cir. 2015) (describing a "surface's coefficient of friction (COF) . . . in layman's terms," as "the degree of slip resistance") (quotation omitted). Accordingly, Dr. Kress found "within a reasonable degree of engineering and human factors probability" that the floor was "reasonably safe." Dr. Kress also inspected the "baseboard area just outside of the shower area" where Adams alleges that water leaked through the corroded area. He "turned on the shower, and purposely directed the spray onto the walls of the shower to observe where and how the water flowed to determine whether it was possible for water to leak" from that rusty area and found that the area did not leak. Dr. Kress added that any water that would have accumulated on the floor outside of the shower would have been caused by Adams's actions, and that "[t]here is no condition in the subject shower or bathroom that causes an unusual amount of water to accumulate on the bathroom floor while a passenger is showering."

Adams claims that the district court erred by relying on Dr. Kress's report in its summary judgment order for two reasons, neither of which has merit. Adams first argues that when the district court denied Adams's motion to strike or limit Dr. Kress's expert testimony under Daubert, it ruled that Adams was "not precluded from making any objections or proper challenges to Dr. Kress's testimony at [the bench] trial, where appropriate," but there was no bench trial where Adams could

7

raise her objections, and Dr. Kress's report was speculative and conclusory, citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). This argument amounts to an attempt to relitigate her Daubert motion in this Court. But we have "jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal." Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1528 (11th Cir. 1987), aff'd sub nom. Osterneck v. Ernst & Whinney, 489 U.S. 169 (1989); see Fed. R. App. P. 3(c)(1)(B) (requiring that a notice of appeal "designate the judgment, order, or part thereof being appealed"). And although the district court denied Adams's Daubert motion in a separate and independent order about a week before it issued its order granting summary judgment to Paradise Cruise, Adams's notice of appeal does not reference the order denying her Daubert motion. Accordingly, we lack jurisdiction to review this argument.[2]

Adams also says that we should afford Dr. Kress's declaration little weight because he examined the bathroom over a year after Adams's fall. But regardless of the persuasive value of Dr. Kress's declaration, even if we view the evidence in the light most favorable to Adams, she has failed to present any evidence that the corroded area was a dangerous condition causing her accident. To the extent Adams

---

[2] In any event, we note that, contrary to Adams's criticisms of Dr. Kress's report, Dr. Kress detailed the methodology he used in reaching his conclusions, and that the barriers to admission of expert opinion testimony are "even more relaxed" in cases like this one, where the judge would be the factfinder. See United States v. Brown, 415 F.3d 1257, 1268–69 (11th Cir. 2005).

8

argues that she was not required to hire her own expert, Adams did not need to submit her own expert testimony to rebut Dr. Kress's declaration, but still had to produce <u>some</u> evidence of the alleged leak that caused her injury.  Adams has failed to do so.  Accordingly, on the summary judgment record before us, Adams's bare, unsatisfactory allegations -- that a leak must have come through the corroded area on the bathroom doorframe of her stateroom and caused her accident -- failed to create a genuine issue of disputed fact about whether there was any dangerous condition that caused Adams's slip and fall.

As for Adams's argument that the pooling of water on the bathroom floor was itself the dangerous condition at issue, Paradise Cruise had no duty to protect Adams from a dangerous condition of which it had no notice.[3]  For a duty to arise, Paradise Cruise must "have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.  [Paradise Cruise's] liability thus hinges on whether it knew or should have known about the risk-creating condition."  <u>Amy v. Carnival Corp.</u>, 961 F.3d 1303, 1308 (11th Cir. 2020) (quotation omitted, alteration accepted).  Although Adams points to three potential sources of notice, none

---

[3] Because we conclude that the district court properly found that the corroded area was not a dangerous condition causing Adams's accident, we do not address her arguments about whether Paradise Cruise had notice of it.

establishes that Paradise Cruise had notice of excessive pooling of water on the bathroom floor.

First, Adams says that Paradise Cruise's policies concerning daily inspection and cleaning of passenger cabins, and notification of any maintenance issues discovered during those inspections provided or should have provided notice of "the water leak" to Paradise Cruise. But this case is distinguishable from the cases Adams cites where we have found a cruise ship's policies to put the ship on notice. In Carroll, the plaintiff clipped her leg on one of the lounge chairs in a walkway, causing her to fall and suffer injuries, and therefore alleged that the cruise ship "negligently maintained a dangerous condition -- 'lounge chairs that narrowed and protruded onto a pedestrian walkway.'" 955 F.3d at 1263. The plaintiff presented evidence that the cruise ship had a policy of "keeping the chairs in-line and/or in the upright position and instructing employees to ensure that they are not blocking the walkway." Id. at 1266. By contrast, the policy here did not consist of such "corrective measures" taken to respond to a "known danger"; rather, it was a general cleaning and inspection policy. Id.

Similarly, in Plott v. NCL Am., LLC, a non-binding, unpublished decision, the plaintiff slipped and fell down two stairs in an atrium and her sister then noticed "colorless and odorless puddles on the floor." 786 F. App'x 199, 201 (11th Cir. 2019). We held that there was a genuine issue of material fact concerning whether

10

the cruise ship had notice that the floor was wet, because two crewmembers were working nearby and the area was "continuously monitored." Id. at 202–03. In Adams's case, however, she was not in a public area, and did not allege that there was water on the floor before her shower that any crewmembers could have seen. And again, there was no corrective policy in place that Paradise Cruise employees may have failed to follow.

Second, Adams's reliance on the sign in the bathroom warning that the floor was slippery when wet is also misplaced. Mere slipperiness is not the complained-of hazard in Adams's case -- instead, she alleged that there was a "pool" or "lake" of water on the bathroom floor. See Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 722 (11th Cir. 2019) ("holding that a cruise ship operator has notice of a condition -- and thus a duty to warn -- if a sign is posted on a ship warning about the condition"). Because the sign did not warn of excessive pooling, we cannot say its presence gave rise to an inference of actual or constructive notice of that condition.

Third, Adams cites a 2017 online posting by a previous Paradise Cruise passenger. The anonymous reviewer said that the "shower constantly leaked out into the bathroom when in use" and that the "[s]hower leaked out on to floor when ever [sic] used." We have held that "evidence of similar accidents might be relevant to the defendant's notice," but have placed limitations on their admissibility -- for example, "conditions substantially similar to the occurrence in question must have

11

caused the prior accident." Jones v. Otis Elevator Co., 861 F.2d 655, 661–62 (11th Cir. 1988) (quotation omitted). Here, Adams failed to develop the record to create any genuine issues of material fact about whether the prior review was substantially similar to her accident. For one, the issues described in the review occurred in a different cabin -- the review indicates that the passenger stayed in Cabin M94, whereas Adams stayed in Cabin E101. The review also failed to describe the amount of water on the floor and the source of the alleged leak. In addition, Paradise Cruise's corporate representative testified that the company was not involved in any legal matters relating to slip and fall incidents or near misses in stateroom bathrooms onboard either of its ships, and that there were no guest complaints from Adams's cabin relating to plumbing or maintenance.

Finally, because we conclude that Adams has failed to raise a genuine issue of fact indicating that Paradise Cruise had actual or constructive notice of a dangerous condition in its stateroom bathroom, we need not address whether the excessive pooling of water was an open and obvious condition of which Adams was or should have been aware. See Amy, 961 F.3d at 1308 (recognizing that notice is material to both negligent-maintenance and failure-to-warn claims). Accordingly, the district court did not err in granting summary judgment to Paradise Cruise, and we affirm.

**AFFIRMED.**