**SECURITY INSURANCE COMPANY OF HARTFORD, a/s/o Jt. International Holdings, B.A., Plaintiff,**

v.

**OLD DOMINION FREIGHT LINE, INC., and Concord Transportation, Inc., Defendants.**

No. 02 Civ. 5258(GEL).

United States District Court, S.D. New York.

Oct. 22, 2003.

Michael J. Slevin, Graham, Miller, Neandross, Mullin & Roonan, L.L.C., New York, NY, for Security Insurance Company of Hartford.

Elias Abilheira, John F. Newman, Abilheira & Ferrara, P.C., New York, NY, for Old Dominion Freight Line, Inc.

Robert S. Goodman, Handler & Goodman, L.L.P., New York, NY, for Concord Transportation, Inc.

## OPINION AND ORDER

LYNCH, District Judge.

The issue before the Court is the rate of prejudgment interest to which the prevailing plaintiff is entitled in this federal question case. Security Insurance of Hartford ("Security"), on behalf of its subrogee R.J. Reynolds, Inc., sued trucking company Old Dominion Freight Line, Inc. ("Old Dominion") and its subcontractor Concord Transportation, Inc. ("Concord") under the Carmack Amendment to the Interstate Commerce Act (carried over into the ICC Termination Act of 1995) for the value of a shipment of cigarettes that was stolen en route from North Carolina to Montreal. The Court granted summary judgment against Old Dominion in the amount of $195,938 plus interest and costs, and dismissed the claims against Concord on certain conditions. *Security Insurance Co. v. Old Dominion Freight Line, Inc.*, No. 02 Civ. 5258(GEL), 2003 WL 22004895 (S.D.N.Y. Aug.20, 2003).

The parties dispute the applicable rate of prejudgment interest. Plaintiff urges that the New York postjudgment rate of 9% per annum, *see* N.Y. C.P.L.R. §§ 5002 & 5004, rather than the federal post-

judgment rate (which plaintiff claims is currently 1.22%), *see* 28 U.S.C. § 1961(a), should apply here because the choice of rate is within the Court's discretion and because the lower federal rate would not fully compensate the plaintiff for the loss. In support of this assertion, plaintiff argues that the federal rate has declined substantially since July 20, 1999, the date of the loss, and that other courts in the Southern District have been known to apply the New York statutory rate to prejudgment interest. (Letter to the Court from Michael J. Slevin, dated October 2, 2003.) Defendant counters that there is no basis for applying the New York rate here because New York's only connection to this case, in which the contract and transactions occurred in North Carolina and the theft in Canada, is that service could be effected here. (Letter to the Court from Elias Abilheira, dated September 26, 2003.) For the reasons that follow, the prejudgment interest rate applicable to the instant judgment will be equal to the federal postjudgment rate provided by 28 U.S.C. § 1961(a), as of the date of the loss of the cargo.

## DISCUSSION

 While no federal statute controls the rate of prejudgment interest, 28 U.S.C. § 1961(a) links the postjudgment interest rate to the interest the Government pays to holders of United States Treasury bills with an average one-year constant maturity. As the Second Circuit has noted, it is within the sound discretion of the trial court whether or not to award prejudgment interest at all, and the same considerations that inform that decision should also inform the choice of interest rate. "In exercising such discretion, the court is to take into consideration (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court," *Jones v. UNUM Life Ins. Co.*, 223 F.3d 130, 139 (2d Cir.2000), quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir.1996) (internal quotation marks omitted). The court emphasized that circumstances must be reviewed individually to determine compensation and fairness in a particular case. *Id.*

Several circuits have pointed to the to the federal postjudgment rate as a starting point in exercising the district court's discretion in this regard. While recognizing that a district court is not "invariably compelled to adopt the statutory postjudgment rate in determining prejudgment interest" in a federal question case, the Sixth Circuit notes with approval that trial courts "may be influenced by the congressional wisdom" in determining an appropriate rate. *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984). The Ninth Circuit goes further, holding that the federal postjudgment interest rate should be applied to prejudgment interest, "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." *Western Pacific Fisheries, Inc. v. SS PRESIDENT GRANT*, 730 F.2d 1280, 1289 (9th Cir.1984). While our Court of Appeals did not establish such a presumption in *Jones v. UNUM*, the Court ultimately affirmed the district court's adherence to the federal rate in that case, based on the minimal reasoning that "it was the most fair and equitable rate available," and that the evidence offered by the plaintiff in support of a higher rate was "unpersuasive." *Jones v. UNUM Life Ins. Co.*, 14 Fed.Appx. 44, 46 (2d Cir.2001).[1]

---

1. The Court recognizes that the Court of Appeals prefers to pretend that such "unpublished" opinions (which of course are in fact electronically published in databases in which

■ The differing formulations in these cases of the weight to be given to the congressional determination are less important than the general conclusion that, in exercising its discretion, a trial court can and should take into account the federal postjudgment interest rate as a starting point for discussion. While the Court has discretion to award interest at a higher rate, it is reasonable to accept the considered judgment of the Congress as to a fair interest rate absent some reason in the facts of the case to do otherwise.

Plaintiff cites no reasons specific to this case to support its position that the higher New York rate should apply. The fact that some district courts, in certain situations, have found that the state rate applies sheds no light on why that rate should apply *here*. This is particularly the case where, as here, the underlying contract is to be construed according to North Carolina law and does not mention New York law. (Contract ¶ 8.) Plaintiff's citation to the Sixth Circuit's decision in *Paper Magic Group, Inc. v. J.B. Hunt Transport, Inc.*, 318 F.3d 458 (3d Cir.2003), affirming an application of the Pennsylvania state postjudgment rate to prejudgment interest, sheds no light because it was based on the specific facts of that case, which are not the facts of *this* case. Similarly, our own Circuit has affirmed the use of the higher interest rate in *First Jersey Securities*, but the defendants there were guilty of fraudulent conduct, a situation quite distinguishable from the present case. Prejudgment interest is awarded here to compensate plaintiff for not having had access to money that rightfully belonged to it for the period after the loss of the cargo and before the entry of judgment in plaintiff's favor. The purpose of prejudgment interest is not to provide plaintiff with a windfall because it brought suit in a state with a higher statutory interest rate.

The fact that the federal interest rate has declined since the date of the cargo loss is likewise not a reason to reject the federal rate in favor of a state rate that happens to be higher. Plaintiff appears to assume, wrongly, that if the state rate does not apply, the Court must impose the federal postjudgment rate in effect as of the date of judgment. But that is not so. It would be arbitrary, and at odds with the purpose of prejudgment interest to compensate the plaintiff for being denied the use of the judgment amount during the prejudgment period, to fix the rate of interest as of the date of the judgment, which will depend on the procedural history of the case, the court's docket, and any number of other factors. Moreover, because the federal rate fluctuates according to the rate on one-year Treasury bills, the rate as of the date of judgment may have no relation to the interest rate the prevailing party could have received had they been promptly reimbursed on the date of the loss.

The prejudgment interest rate here will be fixed as the federal postjudgment interest rate prevailing as of the date of the loss of cargo, July 20, 1999. That rate will fairly compensate the plaintiff for the lost opportunity to invest the money that it was entitled to upon loss of the cargo. Plaintiff suggests that the federal rate may not reflect the return plaintiff might have received in the marketplace. But the Court need not speculate on plaintiff's usual return on capital. Had Old Dominion

they are searchable interchangeably with those opinions the Court of Appeals is prepared to acknowledge) do not exist, and that their results are not binding precedent in the Circuit. But this Court tends to find even the less considered words of a distinguished panel of judges at least as valuable in considering thorny legal issues as the freely-citable musings of student law review notewriters.

reimbursed plaintiff for the cargo as of the date of the loss, plaintiff could have invested that money to its advantage or disadvantage. For purposes of assigning a prejudgment interest rate, the presumption is that plaintiff invested those funds in United States Treasury bills with a 52–week maturity. That is the presumption Congress made when calculating interest rates that should apply to postjudgment interest, 28 U.S.C. § 1961(a), and there is no reason a different presumption should apply here. United States Treasury bills are a conservative yet valid investment option, and reflect a realistic rate of interest that plaintiff could have received.

### CONCLUSION

For the reasons set forth above, the prejudgment rate of interest on the award of $195,938 is fixed as the federal postjudgment interest rate pursuant to 28 U.S.C. § 1961(a), as of July 20, 1999. The parties are directed to prepare a judgment consistent with these instructions for submission to the Court.