**In re LIVENT, INC. Noteholders Securities Litigation**

**No. 98 Civ. 7161(VM).**

United States District Court,
S.D. New York.

March 8, 2005.

Peter A. Binkow, Lionel Z. Glancy, Glancy & Binkow, LLP, Los Angeles, CA, Patrick V. Dahlstrom, Stanley Merrill Grossman, Pomerantz, Haudek, Block, Grossman & Gross, LLP, New York City, Donald R. Wager, for Dorian King.

James L. Burns, Bradley Jay Butwin, O'Sullivan, L.L.P., New York City, Jonathan Rosenberg, O'Melveny & Myers LLP, New York City, for Martin Goldfab.

William J. Connolly, James S. Dittmar, Hutchins, Wheeler & Dittmar, Boston, Ma, for James A. Pattison, Joseph L. Rotman, Scott Sperling, Thomas H. Lee.

Greg A. Danilow, Stephen Alan Radin, Weil, Gotschal & Manges, L.L.P., New York City, Sofia Giatrakos, Citigroup, New York City, for H. Garfield Emerson.

James S. Dittmar, Hutchins, Wheeler & Dittmer, Boston, MA, Sanford F. Remz, Yurko & Salvesen, P.C., Boston, MA, for Joseph L. Rotman.

Daniel P. Gold, Leslie J. Harris, Proskauer Rose, LLP, New York City, for Daniel D. Brambilla.

Don Brian Hufford, Pomerantz, Haudek, Block, Grissom & Gross, LLP, New York City, Eric M. Roth, Wachtell, Lipton, Rosen & Katz, New York City, for A. Alfred Taubman.

Ronald A. Nimkoff, Harvey B. Silikovitz, Nimkoff Rosenfeld & Schecter, LLP, New York City, Harvey L. Pitt, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Garth H. Drabinsky.

Lee S. Richards, III, Richards, Spears, Kibbe & Orbe, New York City, for Myron I. Gottlieb.

### DECISION AND ORDER

MARRERO, District Judge.

Lead Plaintiffs Dorian and Diane King ("Plaintiffs"), on behalf of themselves and a class of investors who purchased some of the $125 million in 9 3/8% Senior Unsecured Notes Due 2004 ("the Notes") issued by Livent, Inc. ("Livent"), moved for summary judgment on their claims under Section 11 of the Securities Act, 15 U.S.C. § 77k, against Garth Drabinsky ("Drabinsky") and Myron Gottlieb ("Gottlieb") (collectively, "Defendants"), the sole remaining defendants in this action. By Decision and Order dated February 4, 2005 ("Decision and Order"),[1] the Court granted Plaintiffs' motion and directed that judgment be entered against Drabinsky and Gottlieb, jointly and severally, in the amount of $23,333,146.

Plaintiffs now have moved the Court for prejudgment interest on the judgment authorized by the Decision and Order at the 9 percent interest rate authorized by New York state law. Drabinsky and Gottlieb have opposed the motion, and have argued in the alternative that even if an award of prejudgment interest were authorized, it should be awarded at a lower interest rate than that sought by Plaintiffs.

After reviewing the parties' arguments, the Court concludes that an award of prejudgment interest at the 9 percent rate sought by Plaintiffs is justified. The judgment shall therefore be amended to include prejudgment interest in the amount of $13,284,550, bringing the total amount of the award against Drabinsky and Gottlieb to $36,617,696.

### I. BACKGROUND

By letter dated February 18, 2005, counsel for Plaintiffs requested prejudgment interest at the rate of 9 percent on the amount awarded in the Decision and Order. Plaintiffs contended in their correspondence that an award of prejudgment interest was necessary to fully compensate them for their losses, and that interest

---

1. The Decision and Order is currently reported at *In re Livent, Inc. Noteholders Securities Litigation,* 355 F.Supp.2d 722 (S.D.N.Y.2005).

should be calculated using New York's forum state law rate of 9 percent. *See* N.Y. C.P.L.R. § 5004. Under the forum state rate, prejudgment interest from the date the suit was filed, October 9, 1998, to the date of the judgment, February 4, 2005, would equal $13,284,550.[2] The Court, construing Plaintiffs' letter as a motion for prejudgment interest, directed Drabinsky and Gottlieb to respond to the motion via letter brief.[3]

In their response, Drabinsky and Gottlieb argued that an award of prejudgment interest was not warranted under the circumstances of the case. In the alternative, they contended that prejudgment interest should be calculated using the federal postjudgment rate authorized by 28 U.S.C. § 1961(a) or the rate authorized by 26 U.S.C. § 6621(a)(2) and used by the Internal Revenue Service ("IRS") for calculating interested on underpayment of taxes. (*See* Letter from Ronald A. Nimkoff, Counsel for Drabinsky and Gottlieb, to the Court 2–3 (Feb. 25, 2005) (hereinafter, "Defs.' Opp'n Letter").) According to Drabinsky and Gottlieb, the applicable federal postjudgment interest rate in this case is 2.89 percent, yielding a total of $4,265,816.83 in prejudgment interest. The analogous IRS underpayment rate, they contended, is 5.00 percent, yielding a total prejudgment interest award of $7,380,306.03, rather than the $13,284,550 Plaintiffs seek.

Since receiving Drabinsky and Gottlieb's letter in opposition to the motion, the Court has received two more communications from the parties: a reply letter from Plaintiffs dated February 28, 2005, and a sur-reply letter from Drabinsky and Gottlieb dated March 1, 2005.[4]

## II. DISCUSSION

### A. THE COURT'S POWER TO AWARD PREJUDGMENT INTEREST

As both Plaintiffs and Defendants acknowledge, "it is within the sound discretion of the trial court whether or not to award prejudgment interest at all, and the same considerations that inform that decision should also inform the choice of interest rate." *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 314 F.Supp.2d 201, 203 (S.D.N.Y.2003), *vacated on other grounds*, 391 F.3d 77 (2d Cir.

---

**2.** Plaintiffs seek only simple prejudgment interest on the judgment amount. They do not argue that interest should be compounded from the date that the suit was filed, even though in some contexts, a court may be required to apply a compound rate of interest to its calculation of prejudgment interest. *See Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993) (concluding that, in the context of a Title VII claim for back pay, a trial court's "failure to apply a compound rate of interest to its calculation of damages constituted an abuse of discretion").

**3.** The Court construed Plaintiffs' letter as a motion to amend the judgment pursuant to Fed.R.Civ.P. 59(e). *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) ("a postjudgment motion for discretionary prejudgment interest constitutes a motion to amend the judgment

under Rule 59(e)"). Plaintiffs' motion was timely: while Rule 59(e) requires that such a motion "be filed no later than 10 days after entry of the judgment," and the Decision and Order was dated February 4, 2005, more than ten days before Plaintiffs' letter, the Decision and Order also directed the Clerk of Court to "stay entry of the judgment authorized herein for ten days from the date of this Order." Decision and Order, slip op. at 41. Thus, judgment could not have been entered against Drabinsky and Gottlieb before February 14, 2005, only four days before Plaintiffs submitted their letter seeking prejudgment interest and well within the ten-day period prescribed by Rule 59(e).

**4.** The Court will direct that these letters be placed on the public docket and made part of the record of this proceeding.

2004). The Supreme Court has noted that in deciding

> if and how much prejudgment interest should be granted ... in a federal securities action such as this case, a district court will consider a number of factors, including whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.

*Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176, 109 S.Ct. 987, 103 L.Ed.2d 146.[5] The Second Circuit has directed courts, when determining if and how much prejudgment interest should be granted to a prevailing party, "to take into consideration (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Jones v. UNUM Life Ins. Co.*, 223 F.3d 130, 139 (2d Cir.2000) (quoting *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir.1996), *cert. denied*, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997)) (internal quotation marks omitted).

Courts within this Circuit have adopted a variety of approaches to determining the interest rate applicable to awards of prejudgment interest, since no federal statute governs which rate should apply to prejudgment interest awards. *See Jones*, 223 F.3d at 139 ("There is no federal statute that purports to control the rate of prejudgment interest."). In *SEC v. Musella*,

748 F.Supp. 1028, 1032 (S.D.N.Y.1989), *aff'd*, 898 F.2d 138 (2d Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990), the court concluded that "[a] district court sitting in New York may use the rate of interest used to calculate prejudgment interest under New York law in calculating prejudgment interest in federal securities law cases." In a 1996 decision, a court in the Eastern District of New York, echoing *Musella*, stated that the forum state's law governing would ordinarily apply to a prejudgment interest award. *See In re Crazy Eddie Securities Litigation*, 948 F.Supp. 1154, 1167 (E.D.N.Y.1996) ("Whether pre-judgment interest is awarded under federal or state law, federal courts have ordinarily looked to state law in determining the appropriate interest rate."). Other courts, when determining how much prejudgment interest should be awarded where the Securities and Exchange Commission ("SEC") is seeking disgorgement from violators of federal securities laws, have concluded that the IRS underpayment rate should be presumed appropriate. *See First Jersey Securities*, 101 F.3d at 1476 (noting that the SEC normally imposes the IRS underpayment rate as the prejudgment interest rate applicable to disgorgment remedies "as reflect[ing] what it would have cost to borrow the money from the government and therefore reasonably approximat[ing] one of the benefits the defendant derived from its fraud").

More recently, a court in this District concluded that the federal statutory postjudgment interest rate should also serve as the applicable prejudgment interest rate, absent evidence indicating that a higher rate should apply to the accrual of prejudgment interest. *See Security Insur-*

---

**5.** The Court noted in a footnote, however, that in enumerating these factors it was not intending "to specify what factors a district court must consider when deciding under federal law whether to grant prejudgment interest." *See id.* at 176 n. 2, 109 S.Ct. 987.

*ance*, 314 F.Supp.2d at 202 ("in exercising its discretion, a trial court can and should take into account the federal postjudgment interest rate as a starting point for discussion").[6]

Regardless of the interest rate used as a starting point by a court evaluating a motion for prejudgment interest, the Second Circuit has made clear that a court "need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government." [7] *Jones*, 223 F.3d at 139. For example, the Court may "consider whether the plaintiff would have invested the money at some higher rate; or it may take into account the rate of interest that the defendant would have had to pay to borrow the money it withheld from the plaintiff." *Id.* (internal citations omitted).

### B. *PREJUDGMENT INTEREST AT THE 9 PERCENT RATE IS WARRANTED*

██ Application of the four-pronged test articulated by *Jones* and earlier cases to the facts of this case leads the Court to conclude that Plaintiffs are entitled to an award of prejudgment interest at the forum state rate of 9 percent. Plaintiffs must obtain prejudgment interest if they are to be close to fully compensated for their losses. Setting the prejudgment interest rate at 9 percent is necessary to closely approximate the 9 3/8 percent interest rate that Plaintiffs actually would have obtained on the Notes had their investments not been rendered valueless by Livent's bankruptcy, which is directly

traceable to Defendants' poor, and likely fraudulent, leadership of the company.

Considering first "the need to fully compensate the wronged party for actual damages suffered," *Jones*, 223 F.3d at 139, the Court concludes that damages available to Plaintiffs under Section 11 of the Securities Act do not by themselves compensate Plaintiffs fully for the loss attributable to Defendants' and others' wrongdoing while serving in leadership roles at Livent. Section 11(e) prescribes a strict damages formula that, as relevant here, limits damages to the difference between the price at which the security at issue was purchased and the value of the security at the time the suit was brought. *See* 15 U.S.C. § 77k(e). The Section 11 damages formula does not, however, enable plaintiffs holding debt instruments such as the Notes to obtain damages associated with loss of the income that would have been obtained from the debt before it matured. In this case, the Notes actually would have paid Plaintiffs 9 3/8 percent interest per annum until their maturation date in late 2004 had the company not gone bankrupt and ceased paying its debt obligations. The damages authorized by the Decision and Order do not compensate Plaintiffs for the loss of this income. Thus, an award of prejudgment interest at the 9 percent rate authorized by N.Y. C.P.L.R. § 5004 and applied in federal securities suits such as *Musella* and *Crazy Eddie*, *supra*, is appropriate to more fully compensate Plaintiffs for actual damages traceable to Defendants' violation of the federal securities laws.

---

**6.** The court in *Security Insurance*, however, distinguished *First Jersey Securities* on the grounds that in that case, the defendants were guilty of fraudulent conduct, whereas the case before the court presented no similar evidence of wrongdoing on the part of the defen-

dants. *See Security Insurance*, 314 F.Supp.2d at 204.

**7.** The postjudgment interest rate established by 28 U.S.C. § 1961(a) is linked to the rate of interest paid by the federal government on money it borrows via Treasury bills.

Turning next to considerations of fairness and the relative equities of the award, the Court concludes that assessing prejudgment interest at a 9 percent rate is fair and equitable under the circumstances. Though liability under Section 11 will lie without proof of fraud, ample evidence of Defendants' egregious wrongdoing may be found in the record before the Court.[8] Furthermore, Plaintiffs have waited more than six years to reach judgment, in large part due to dilatory tactics engaged in by Defendants. It is thus equitable to hold Defendants responsible for interest on the amount lost by Plaintiffs.

Defendants argue that a 9 percent interest rate would treat them unfairly, considering that they, too, lost substantial amounts of money when Livent filed for bankruptcy, and gained nothing as a result of Plaintiffs' loss. (*See* Defs.' Opp'n Letter at 2.) The Court concludes that, even putting aside Plaintiffs' counterarguments that Defendants benefited by prolonging the fraud for as long as they did, it would still be appropriate to calculate prejudgment interest based on a rate corresponding to Plaintiffs' actual lost interest income, rather than to any ill-gotten gains that Defendants may have hypothetically reaped from their wrongdoing. *See Jones,* 223 F.3d at 139 (authorizing district courts to consider the rate at which a plaintiff may have invested the lost funds *or* the interest rate at which a defendant would have had to pay to borrow money wrongfully gained); *Diduck v. Kaszycki & Sons Contractors, Inc.* 974 F.2d 270, 286 (2d Cir.1992) ("One must look to the return on investments held by the [plaintiff] to determine the appropriate interest rate to be applied.... The burden is on defendant to demonstrate the [plaintiff] would not have placed the money in the most profit-

able of equally plausible investment alternatives."); *Webb v. GAF Corp.,* 949 F.Supp. 102, 105 (N.D.N.Y.1996) ("Ultimately, the purpose of prejudgment interest is to fully compensate the plaintiff, by taking into account the time-value of money."). Because Defendants have introduced no evidence that Plaintiffs would not have earned the 9 3/8 percent they were entitled to under the terms of the Notes had Livent not gone bankrupt when the fraudulent activities at the company were discovered, the Court concludes that it would not be unfair to require Defendants to pay prejudgment interest approximating the Notes' 9 3/8 percent interest rate.

■ Turning to the third prong of the analysis, the Court concludes that the purpose of Section 11 is remedial rather than punitive. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 386, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (noting the "broad remedial purposes" of Section 11 and other provisions of the federal securities laws). There is thus no reason to deny Plaintiffs prejudgment interest based on the nature of the statute involved in the suit. The fourth prong of the analysis, requiring the Court to consider "such other general principles as are deemed relevant," *Jones,* 223 F.3d at 139, reveals no other legal or equitable principles that would stand in the way of Plaintiffs' being awarded prejudgment interest at the 9 percent rate authorized under New York law. Consequently, the Court grants Plaintiffs' motion for an award of prejudgment interest in the amount of $13,284,550.

### III. *ORDER*

For the reasons discussed above, it is hereby:

---

8. Portions of the record that provide evidence of Defendants' fraudulent activities while

serving in leadership roles at Livent are discussed in the Decision and Order.

**ORDERED** that the motion of Lead Plaintiffs Dorian and Diane King ("Plaintiffs"), on behalf of themselves and a class of investors who purchased some of the $125 million in 9 3/8% Senior Unsecured Notes Due 2004 ("the Notes") issued by Livent, Inc. ("Livent"), for an award of prejudgment interest at 9 percent per annum against defendants Garth Drabinsky ("Drabinsky") and Myron Gottlieb ("Gottlieb") pursuant to Fed.R.Civ.P. 59(e), is granted; and it is further

**ORDERED** that the previously-entered judgment shall be amended to include prejudgment interest in the amount of $13,284,550. The Clerk of Court is directed to enter an amended judgment against Drabinsky and Gottlieb, jointly and severally, for damages and prejudgment interest in the amount of $36,617,696; and it is further

**ORDERED** that all other provisions of the prior judgment shall remain unchanged, except that notice of the judgment and any motion submitted pursuant to Fed.R.Civ.P. 23(h), as well as any supplemental papers related to the judgment, shall now be mailed to parties and class members and submitted to the Court by no later than April 15, 2005. Any party or class member objecting to a Rule 23(h) motion, or to any other supplemental papers related to the judgment, now must do so by no later than May 27, 2005; and it is finally

**ORDERED** that the Clerk of Court shall place correspondence of the parties related to the instant motion on the public docket and make them a part of the record of this proceeding.

As stated previously, the Clerk of Court is directed to close this case, provided, however, that the Court shall retain jurisdiction for the purposes of any proceedings necessary to enforce the judgment authorized herein, and to consider any motion for attorney's fees and costs.

**SO ORDERED.**