**Robert L. KOSNOSKI, Plaintiff–Appellant,**

v.

**James R. HOWLEY; Howley Group Limited, Incorporated, Defendants–Appellees.**

**No. 93–1799.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1994.

Decided Aug. 29, 1994.

**ARGUED:** Gregory Lee Lyons, Moss & Rocovich, P.C., Roanoke, VA, for appellant. David B. Buerger, Pittsburgh, PA, for appellees. **ON BRIEF:** Gerald A. Dechow, Moss & Rocovich, P.C., Roanoke, VA; Pat Fragile, Wooton, Wooton & Fragile, Beckley, WV, for appellant. Melissa Manson Hambrick, Ditrapano & Jackson, Charleston, WV, for appellees.

Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and SPROUSE, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge WILLIAMS and Senior Judge SPROUSE joined.

## OPINION

ERVIN, Chief Judge:

This is the second appeal to this court arising from a diversity action in the United States District Court for the Southern District of West Virginia. Jurisdiction in the district court was proper based on 28 U.S.C. § 1332. Robert Kosnoski (Kosnoski), an unsuccessful plaintiff in the litigation on the merits below, timely appeals from a final judgment and order of the district court re-

quiring him to pay prejudgment interest on a successful counterclaim brought by James Howley (Howley). Appellate jurisdiction lies under 28 U.S.C. § 1291. For the reasons stated below, we affirm.

## I.

The case presented on appeal addresses almost purely procedural questions. We abbreviate the description of the underlying dispute accordingly.

Kosnoski was the owner of two companies, Beckley Stone Company and Raleigh Stone Company, which he desired to sell. In July 1988, he entered into an agreement with Howley, under which Howley would act essentially as a finder for the sale of these companies in exchange for a fee. Howley's fee was set at five percent of the first $6,500,000 of total consideration, plus fifty percent of any amount above $6,500,000. Howley undertook significant efforts that eventually bore fruit, and Pioneer Concrete of America, Inc. (Pioneer) purchased the companies.[1] Under the purchase agreement, Pioneer paid $3,700,000 directly to Kosnoski for the purchase of Beckley Stone Company, and also paid $1,800,442 to various Kosnoski-controlled affiliates to satisfy the outstanding debts of Beckley Stone Co.

While happy to sell his companies, Kosnoski was loath to pay Howley for his assistance in securing a buyer. Although Kosnoski paid Howley 5% of the $3,700,000 amount he received from Pioneer directly, he refused to pay Howley 5% of the $1,800,442 payment Pioneer made to Kosnoski indirectly. Subsequently, Kosnoski brought the underlying action, later removed to federal court, to declare his contract with Howley void and unenforceable under the West Virginia securities statutes and praying for return of the 5% commission already paid. Howley defended the validity of the contract and counterclaimed, asserting that Kosnoski owed him

an additional 5% on the $1,800,442 paid to the affiliates. The district court, in an extended memorandum interpreting state law, found in Howley's favor. In both its memorandum and its order,[2] the court stated that Howley was entitled to receive "$90,022.10 (i.e., 5% of $1,800,442.00) *plus any appropriate pre-judgment and post-judgment interest at the legal rate.*" (Emphasis supplied.)

Kosnoski appealed the judgment on the merits to this court, which affirmed in an unpublished opinion. *Kosnoski v. Howley,* 976 F.2d 726 (4th Cir.1992). Following the denial of the motion for rehearing or rehearing en banc, Kosnoski refused to pay prejudgment interest to Howley, arguing that the district court had not determined the date from which interest would begin to accrue. Howley then filed a motion to fix interest with the district court. Kosnoski responded, arguing that such a motion was untimely filed because it was a motion to alter or amend the judgment, and thus should be governed by Federal Rule of Civil Procedure 59(e)'s 10–day window. Howley took the position that this was not a motion to alter or amend the judgment because the judgment already had stated that interest was being awarded; rather, it merely asked the judge to do the calculation of the amount and thus was not governed by the 10–day limit of Rule 59(e) but rather could be made at any time as a correction of an omission under Rule 60(a). The court issued an order siding with Howley, and amended the original order to include the following language:

> To wit: Having been awarded liquidated damages herein, the Court specifically finds pursuant to W.Va.Code § 56–6–31 that the Defendants are entitled to an award of pre-judgment interest to run from April 12, 1989, until the date of entry of this Judgment Order. Calculations applying the 10% per annum interest rate provided by § 56–6–31 reveal the total of such pre-judgment interest to be $21,-

---

1. Actually, by then Kosnoski had merged Raleigh Stone Company into Beckley Stone Company, so technically Pioneer bought just one company.

2. Three separate times in his briefs, Kosnoski states that the memorandum opinion that accompanied the judgment order did not mention pre and postjudgment interest. This is patently in-

correct. See page 35 of the memorandum opinion, J.A. 69, which is identical to the language used in the court's order (awarding "$90,022.10 (i.e., 5% of $1,800,442.00) plus any appropriate pre-judgment and post-judgment interest at the legal rate").

950.63. Adding this sum to the liquidated damages awarded herein, results in a total judgment of $111,972.73. As to post-judgment interest thereon, the Court finds that the Defendants are entitled under 28 U.S.C. § 1961 to an award of such interest at the rate of 5.57% per annum until paid in full.

Having lost again, Kosnoski again appeals.

## II.

■ Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Federal Rule of Civil Procedure 60(a) provides in part:

> Clerical mistakes in judgments, orders or other parts of the record and *errors therein arising from oversight or omission* may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

(Emphasis supplied.) Kosnoski bases his appeal on the argument that Howley's motion to fix interest, which in effect was a motion for a more definite statement as to the amount of judgment, should be considered a motion to alter or amend the judgment, rather than a motion relating to errors arising from oversight or omission.

The question of whether various sorts of postjudgment motions fall within Rule 59(e) has been well explored in a series of Supreme Court cases. In *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the Court ruled that a postjudgment motion for attorneys' fees under 42 U.S.C. § 1988 was not a Rule 59(e) motion. The Court stated that a postjudgment motion will be considered a Rule 59(e) motion where it involves "reconsideration of matters properly encompassed in a decision on the merits." *Id.* at 451, 102 S.Ct. at 1166. Because a § 1988 attorneys' fees motion did not fit that description and raised legal issues "collateral

to the main cause of action," *id.,* and the award of attorneys' fees was separate from the underlying award of damages, it was not governed by Rule 59(e). In *Buchanan v. Stanships, Inc.,* 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988), the Court, applying the reasoning laid out in *White,* held that a motion for costs also did not fit within Rule 59(e).

In contrast, in *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), the Court held that a postjudgment motion for discretionary prejudgment interest was governed by Rule 59(e). The Court gave several reasons in support of this result. First, it stated that, unlike costs or attorneys fees, "prejudgment interest traditionally has been considered part of the compensation due plaintiff." *Id.* at 175, 109 S.Ct. at 991. Second, such a motion does not raise issues "wholly collateral to the judgment in the main cause of action." *Id.* (internal quotation omitted). Finally, it stated that this "helps further the important goal of avoiding piecemeal appellate review of judgments." *Id.* at 177, 109 S.Ct. at 992. While the facts of the case involved only a motion for *discretionary* prejudgment interest, the Court stated in a broad footnote that this holding would apply to cases involving *mandatory* prejudgment interest as well. *Id.* at 176 n. 3, 109 S.Ct. at 992 n. 3.

Thus, if the district court's original judgment order did not mention an award of prejudgment and postjudgment interest, Howley's later motion to fix interest clearly would be governed by *Osterneck* and would be considered untimely filed. In this instance, however, the order *does* clearly state that Howley should receive "$90,022.10 (i.e., 5% of $1,800,442.00) *plus any appropriate pre-judgment and post-judgment interest at the legal rate.*" (Emphasis supplied.) This case is thus unlike *Osterneck* because the motion to fix interest was not an *initial* request for interest but rather a request that the court clarify the appropriate amount of interest *previously and properly awarded.*[3]

---

**3.** Kosnoski introduces an elaborate argument that the court did not "award" interest in the initial judgment order, so that the later motion was indeed a "new" motion that falls under

*Osterneck.* He relies for support on the court's statement in a footnote of its subsequent order that the evidence was sufficient "to award such interest without the necessity of having a hearing

The question is therefore whether the distinctions between this case and *Osterneck* are sufficient to change the result. We believe that they are. It is true that a motion requesting the court to fix the precise amount of interest previously awarded requires the court to take up the matter of prejudgment interest in a general sense, and prejudgment interest is a traditional component of the damages remedy rather than a collateral "cost," so that there is an initial plausibility to the suggestion that *Osterneck* would apply. Nevertheless, such a court does not revisit the merits of the question and certainly does nothing that can be called "reconsidering" the matter. Instead, the court is asked to perform a completely ministerial task by plugging the time period, the interest rate and the judgment amount into a preset formula and announcing the result.

The facts of this case demonstrate the ministerial nature of the court's responsibility: both parties understood that interest had been awarded; both parties understood that West Virginia law set the rate of prejudgment interest at ten percent; and both parties understood the time frame for computation. The court's only task was to do the calculation and make the amount official. We simply do not believe that by performing this function the court altered or amended the judgment. Rather, we are persuaded that the court, in undertaking such a task, merely supplies a figure to the judgment, the amount of which already had been fixed at the time of the entry of judgment. This omission is the type of error that is properly within the scope of Rule 60(a).

In the post-*Osterneck* period, one other court has addressed this question and found that such a motion is not governed by Rule 59(e). In *McNickle v. Bankers Life and Casualty Co.*, 888 F.2d 678 (10th Cir.1989), a case almost identical to this one, the Tenth Circuit reversed a district court that thought it lacked the power to convert its award "with interest thereon as provided by law" in a final judgment into a particular amount in response to a motion made by the plaintiff

following the resolution of the case on its merits on appeal. In distinguishing the facts from those of *Osterneck*, the Tenth Circuit noted:

> By their Rule 60(a) motion, the plaintiffs essentially requested the court to insert the omitted particulars of the prejudgment interest award. This was neither an original post-judgment request for prejudgment interest nor a request that the amount due to them be changed in any way. Rule 60(a) specifically addresses the problem of omissions in judgments. If a court's judgment states that interest is to be "according to law" but the rate is not specified, the court may specify, in response to a Rule 60(a) motion, the appropriate rate at any time.

*Id.* at 682. At least two courts in the pre-*Osterneck* period similarly held that a motion of this sort was not governed by Rule 59(e). Noting the "distinction between making a judgment more specific in the face of an original omission, and actually changing a term of the judgment, such as a specified rate or starting time for interest," the Fifth Circuit, in *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 547 F.2d 924, 928 (5th Cir.1977), remanded the case to the district court to allow it to specify the date from which interest should begin to run. The same result, on an order awarding damages of a sum certain "plus interest thereon as provided by law," can be found in *United States v. Kenner*, 455 F.2d 1 (7th Cir.1972).

The task required of the court was completely ministerial, and involved the mere application of a series of facts previously determined to a set formula in order to elucidate a part of the judgment order that, while providing notice to all as to their positions, was sufficiently inexact to allow Kosnoski to attempt not to comply. We disagree with Kosnoski's contention that the court altered or amended the judgment by so doing, and therefore affirm.

or the submission of additional material thereon." Because it used the word "award" here, he argues, it did not intend to award interest before. This is sheer sophistry. The language of the

September 19, 1991 judgment order and memorandum opinion, and the related docket entry all clearly demonstrate an intent to award interest. We decline to play Kosnoski's semantic game.

### III.

Under W.Va.Code § 56–6–31, prejudgment interest is mandatory, and is calculated "from the date the right to bring the same shall have accrued, as determined by the court." Kosnoski argues that the court erred in setting April 12, 1989 as the date from which interest accrued. He argues that such a determination is one of fact and that, because the record is silent on when the transaction closed (a magic date for the calculation, since the agreement between Kosnoski and Howley stated that Kosnoski would pay Howley no later than fourteen days after the closing of the sale), the court erred in determining, on a Rule 60(a) motion, the date from which interest accrued.

We simply disagree with Kosnoski concerning the propriety of the district court's actions. Until this point, there has never been any disagreement among the parties over the timing of the transaction in question; the sole question has related to the validity of the contract between Kosnoski and Howley regarding the rights arising from that transaction. Indeed, Kosnoski does not indicate that the closing did not occur on the date all concerned believe it did; he merely asserts that the closing between himself and Pioneer *may* not have occurred on the date set in the contract of sale. Finally, we note that this was not a new "finding of fact" at all, for the district court had stated clearly in its memorandum opinion, in a section titled "Summary of Facts," the precise factual finding Kosnoski now protests:

> *On the closing date,* pursuant to the terms of the contract, Pioneer Concrete at the direction of Kosnoski paid the "additional consideration" to RLK, Inc., which then dispersed the sum to other affiliates and Kosnoski.

(Footnote omitted.) (Emphasis supplied.) Given this express finding by the district court, Kosnoski's argument is completely baseless, and we reject it entirely. Accordingly, we affirm the district court.

*AFFIRMED.*