**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-2142**

CATERPILLAR FINANCIAL SERVICES CORPORATION,

        Plaintiff - Appellee,

ATLANTIC CAPES FISHERIES, INCORPORATED,

        Intervenor/Plaintiff - Appellee,

    v.

THE F/V SITE CLEARANCE I, her engines, tackle, appurtenances, equipment, cables, apparel, fishing permits, furniture, and necessaries appertaining thereto, in rem (Official Number 1052907); SITE CLEARANCE I, L.L.C.; MASSIE TOWING, INCORPORATED; ROBERT J. THOMASSIE, JR.; MICHAEL P. DANIELS,

        Defendants,

    and

F/V CAPTAIN DYLAN, INCORPORATED,

        Intervenor/Defendant - Appellant.

**No. 06-2222**

ATLANTIC CAPES FISHERIES, INCORPORATED,

        Plaintiff - Appellee,

    v.

F/V CAPTAIN DYLAN, INCORPORATED,

    Defendant - Appellant,

  and

CARLOS M. GUTIERREZ, Secretary of Commerce; PATRICIA A. KURKUL, Regional Administrator for the National Marine Fisheries Service,

    Defendants.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh and Elizabeth City. Terrence W. Boyle, District Judge. (2:05-cv-00010-BO; 2:06-cv-00024-BO)

---

Argued: November 2, 2007    Decided: April 25, 2008

---

Before NIEMEYER and KING, Circuit Judges, and James A. BEATY, Jr., Chief United States District Judge for the Middle District of North Carolina, sitting by designation.

---

No. 06-2142 affirmed; No. 06-2222 dismissed by unpublished per curiam opinion.

---

Thomas J. Muzyka, CLINTON & MUZYKA, P.C., Boston, Massachusetts, for Appellant. Stephen M. Ouellette, OUELLETTE & SMITH, Gloucester, Massachusetts, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

These appeals arise from proceedings in the Eastern District of North Carolina, in which F/V Capt. Dylan, Incorporated, unsuccessfully sought ownership of certain fishing permits assigned to a vessel owned by Atlantic Capes Fisheries, Incorporated, but used by The F/V Site Clearance I.  Capt. Dylan's claim to the fishing permits stems from its September 2005 purchase of Site Clearance I from Caterpillar Financial Services Corporation, which, in turn, had obtained Site Clearance I by virtue of a July 2005 foreclosure sale ordered by the district court.  During this same time period, the fishing permits were first transferred from Site Clearance I back to the Atlantic Capes vessel, and then restored to Site Clearance I.  To resolve their ensuing dispute over ownership of the fishing permits, Atlantic Capes and Capt. Dylan intervened in the original foreclosure action, and Atlantic Capes also brought its own lawsuit against Capt. Dylan.

Capt. Dylan appeals from two decisions of the district court in favor of Atlantic Capes.  In No. 06-2142, Capt. Dylan contests the court's September 28, 2006 order in the original foreclosure action, by which the court clarified that its prior foreclosure-related orders excluded the disputed fishing permits from the sale of Site Clearance I to Caterpillar, and thus mandated that the permits be returned from Site Clearance I to the Atlantic Capes vessel.  See Caterpillar Fin. Servs. Corp. v. The F/V Site

3

Clearance I, No. 2:05-cv-00010 (E.D.N.C. Sept. 28, 2006) (the "September 2006 Clarification Order").[1] In No. 06-2222, Capt. Dylan challenges the court's October 20, 2006 order in Atlantic Capes's lawsuit, recognizing that the central issue in that matter — the ownership of the fishing permits — was resolved by the September 2006 Clarification Order in the original foreclosure action. See Atl. Capes Fisheries, Inc. v. Gutierrez, No. 2:06-cv-00024 (E.D.N.C. Oct. 20, 2006) (the "October 2006 Atlantic Capes Order").[2] As explained below, we affirm in No. 06-2142 and dismiss No. 06-2222.

## I.

## A.

The original foreclosure action, referenced in the Eastern District of North Carolina as No. 2:05-cv-00010, was initiated by Caterpillar under the Maritime Commercial Instruments and Liens Act (specifically, 46 U.S.C. § 31325), to foreclose on The F/V Site Clearance I. Caterpillar had made a $1.6 million loan in February 2004 to the vessel's owner, Site Clearance I, L.L.C., with three guarantors (Massie Towing, Incorporated; Robert J. Thomassie, Jr.;

---

[1] The September 2006 Clarification Order is found at J.A. 263-72. (Our citations to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2] The October 2006 Atlantic Capes Order is found at J.A. 295-97.

4

and Michael P. Daniels) executing three separate guarantees.  As security for its promissory note, Caterpillar was granted a "Preferred Ship Mortgage," which gave Caterpillar a first-priority security interest in Site Clearance I.  At that time, the only fishing permits appurtenant to Site Clearance I were open access fishing permits (the "Open Access Permits").

Five months later, in July 2004, Site Clearance I, L.L.C., entered into a "Seafood Marketing Agreement" with Atlantic Capes, whereby Atlantic Capes allowed The F/V Site Clearance I to make use of certain limited access fishing permits (the "Limited Access Permits") that were then assigned to Atlantic Capes's fishing vessel The F/V Maelstrom.  Caterpillar executed a written "Acknowledgment" by which it consented to the Seafood Marketing Agreement and agreed that the Limited Access Permits were not considered appurtenant to Site Clearance I, were not part of Caterpillar's security interest in the vessel, and would not be sought in any potential foreclosure action.  Site Clearance I, L.L.C., subsequently defaulted on its repayment obligations to Caterpillar.

On February 22, 2005, Caterpillar initiated the foreclosure action by filing a Verified Complaint, naming as a defendant the "Vessel SITE CLEARANCE I, . . . her engines, anchors, cables, rigging, tackle, apparel, furniture, equipment, its fishing permits, including all renewals, wherever found, and all other

appurtenances and necessaries therewith appertaining." J.A. 11 (emphasis added).[3] The Complaint requested "[t]hat Process in rem and a Warrant of Arrest be issued . . . against the Defendant Vessel SITE CLEARANCE I, her engines, anchors, cables, rigging, tackle, apparel, fishing permits, furniture, and all the other necessaries therewith appertaining." Id. at 20 (emphasis added). Of significance, a copy of the Open Access Permits — but not the Limited Access Permits — was attached to the Complaint. See id. at 44.

The following day, February 23, 2005, the district court entered an order authorizing the Clerk of Court "to issue a warrant for the arrest of the F/V SITE CLEARANCE I[,] her engines, boats, tackle, apparel, furniture, equipment, and appurtenances, etc." Caterpillar Fin. Servs. Corp. v. The F/V Site Clearance I, No. 2:05-cv-00010 (E.D.N.C. Feb. 23, 2005) (the "February 2005 Order to Arrest").[4] Pursuant to the warrant, Site Clearance I was seized by the United States Marshal in March 2005. Thereafter, Atlantic Capes applied to the National Marine Fisheries Service (the "NMFS") to have the Limited Access Permits transferred back to The F/V

---

[3]The other defendants named in the Verified Complaint were Site Clearance I, L.L.C., and the three loan guarantors (Massie Towing, Thomassie, and Daniels).

[4]The February 2005 Order to Arrest is found at J.A. 63-64.

Maelstrom. On May 4, 2005, the NMFS approved the requested transfer.

On June 22, 2005, the district court issued an order directing the Marshal to sell "the 'SITE CLEARANCE I', . . . engines, tackle, appurtenances, equipment, cables, apparel, <u>fishing permits</u>, furniture, and necessaries appertaining thereto, etc." <u>See Caterpillar Fin. Servs. Corp. v. The F/V Site Clearance I</u>, No. 2:05-cv-00010 (E.D.N.C. June 22, 2005) (the "June 2005 Order to Sell") (emphasis added).[5] On July 15, 2005, the vessel was sold at auction to Caterpillar for $350,000. On August 2, 2005, a "Memorandum of Agreement" was executed under which Caterpillar was to sell Site Clearance I to Capt. Dylan for $700,000 on an "AS IS, WHERE IS" basis. <u>See</u> J.A. 444-46. In subsequent communications, Caterpillar and Capt. Dylan acknowledged and discussed the issue of whether the Limited Access Permits were appurtenant to Site Clearance I and would be part of the purchase of the vessel. The Caterpillar representatives involved in these discussions were aware that Caterpillar may have previously agreed that the Limited Access Permits would not be considered appurtenant to Site Clearance I, but they apparently did not have knowledge or possession of Caterpillar's written Acknowledgment of the Seafood Marketing Agreement by which it promised not to seek the Limited Access Permits in any foreclosure action.

_____

[5]The June 2005 Order to Sell is found at J.A. 89-90.

On August 23, 2005, the district court entered an order recognizing the sale to Caterpillar of "the vessel and all her related equipment, tackle, appurtenances, <u>fishing permits</u>, etc.," and approving and confirming "the sale of the Vessel SITE CLEARANCE I, and all her engines, tackle, appurtenances, <u>fishing permits</u>, equipment, necessaries, etc." for the sum of $350,000. <u>See</u> <u>Caterpillar Fin. Servs. Corp. v. The F/V Site Clearance I</u>, No. 2:05-cv-00010 (E.D.N.C. Aug. 23, 2005) (the "August 2005 Order Confirming Sale") (emphasis added).[6] In a September 1, 2005 e-mail message, Capt. Dylan assured Caterpillar that "[w]e are simply requesting that Caterpillar convey to us, exactly what was granted to [it] by the Marshal through the foreclosure." J.A. 150. The following day, September 2, 2005, Caterpillar closed its private sale of Site Clearance I to Capt. Dylan for $700,000.

Around that same time, the NMFS informed Atlantic Capes that, on September 9, 2005, it would be rescinding the transfer of the Limited Access Permits from Site Clearance I to The F/V Maelstrom. The NMFS cited newly discovered information that Site Clearance I had been seized by the United States Marshal prior to the date that Atlantic Capes requested the return of the permits — a seizure that, in the view of the NMFS, had deprived it of the power to authorize the transfer. Accordingly, the NMFS deemed the transfer

---

[6]The August 2005 Order Confirming Sale is found at J.A. 96-97.

"void" and declared the Limited Access Permits "restored" to Site Clearance I.  See J.A. 125.

On September 15, 2005, however, Caterpillar alerted Capt. Dylan by facsimile message, with a copy of its written Acknowledgment of the Seafood Marketing Agreement attached, that "Caterpillar was placed on notice several months after the mortgage was filed that the [Limited Access Permits were] not to be considered an appurtenance of the vessel or collateral for the mortgage," and that, "[a]s such, Caterpillar would likely be estopped from claiming that they were among those permits arrested with the subject vessel."  J.A. 157.  Caterpillar offered to discuss alternative arrangements if that news affected Capt. Dylan's desire to own Site Clearance I, but Capt. Dylan did not attempt to relinquish the vessel.  Thereafter, on October 7, 2005, the NMFS officially transferred the Limited Access Permits to Site Clearance I (now owned by Capt. Dylan).

On October 25, 2005, Atlantic Capes filed a motion to intervene as a plaintiff in the foreclosure action, a complaint against Site Clearance I, a cross-claim against Caterpillar, and a "Motion to Clarify Confirmation of Sale" — all asserting Atlantic Capes's rights to the Limited Access Permits.  On December 14, 2005, Capt. Dylan filed a motion to intervene, as well as an opposition to Atlantic Capes's Motion to Clarify Confirmation of Sale.  On April 14, 2006, the district court granted the motions to

intervene pursuant to Federal Rule of Civil Procedure 24, deeming both Atlantic Capes and Capt. Dylan to be proper intervenors. During a June 28, 2006 hearing on the pending issues, Caterpillar indicated that, consistent with Atlantic Capes's view, the Limited Access Permits were <u>not</u> among the rights it obtained by purchasing Site Clearance I.

Thereafter, in its September 2006 Clarification Order, the district court observed that the dispute between Atlantic Capes and Capt. Dylan "turns on an ambiguity seized upon by both parties: whether [the term] 'fishing permits'" — as used in the Verified Complaint, the June 2005 Order to Sell, and the August 2005 Order Confirming Sale — "encompassed the 'Limited Access Permits.'" September 2006 Clarification Order 5. The court explained that any ambiguity in its orders "was inadvertent, since from the outset neither Caterpillar, nor [Site Clearance I, L.L.C.], nor the Court intended for the Limited Access Permits to be seized or sold along with Site Clearance I." <u>Id.</u> at 6. The court acknowledged that "[t]he Verified Complaint did not specify whether the Limited Access Permits were included among" those items against which Caterpillar sought foreclosure, but observed that "Caterpillar acknowledged in July 2004 [in its written Acknowledgment of the Seafood Marketing Agreement] that the Limited Access Permits would not form part of its security interest in Site Clearance I, and

10

that Caterpillar would not seek those permits as part of any foreclosure action."  Id.

The district court thus determined that "the 'fishing permits' described in Caterpillar's Verified Complaint included the Open Access and other permits appurtenant to Site Clearance I, but excluded the Limited Access Permits at issue here."  September 2006 Clarification Order 6-7.  And, the court explained that its February 2005 Order to Arrest, June 2005 Order to Sell, and August 2005 Order Confirming Sale "were meant only to enable Caterpillar to obtain the relief sought by its Verified Complaint — foreclosure upon Site Clearance I and all the items Caterpillar understood as legally connected to the vessel."  Id. at 7. According to the court,

> [i]n ordering the seizure and eventual sale of Site Clearance I, the Court did not intend "fishing permits" to reach beyond the scope of the relief requested by Caterpillar in its Verified Complaint. The broader, more literal view of "fishing permits," which NMFS understandably adopted in rescinding the transfer of the permits back to F/V MAELSTROM, and which Capt. Dylan argues for here, was incorrect.

Id.  The court also noted that fishing permits are generally treated as appurtenant to commercial fishing vessels — a point supported by a case relied on by Capt. Dylan, Gowen, Inc. v. F/V Quality One, 244 F.3d 64 (1st Cir. 2001) — but that the Limited Access Permits at issue here (unlike the permits in Gowen) had been specifically excluded from foreclosure by the lender.  See id. at

11

7 n.5. For these reasons, the court granted Atlantic Capes's Motion to Clarify Confirmation of Sale, and, pursuant to Federal Rule of Civil Procedure 60(a), clarified its prior February 2005 Order to Arrest, June 2005 Order to Sell, and August 2005 Order Confirming Sale "to reflect the exclusion of the Limited Access Permits from the foreclosure and sale of Site Clearance I." Id. at 7. The court further ordered the NMFS "to restore the transfer of the Limited Access Permits from Site Clearance I to Atlantic Capes." Id. On October 24, 2006, Capt. Dylan noted an appeal from the interlocutory September 2006 Clarification Order.

B.

Meanwhile, on October 11, 2005, in the District of Massachusetts, Atlantic Capes initiated its own lawsuit, seeking rescission of the NMFS's actions and restoration of the Limited Access Permits. Atlantic Capes named as defendants — in addition to Capt. Dylan — the Secretary of Commerce and a Regional Administrator for the NMFS. In the operative complaint (an Amended Complaint filed on October 31, 2005), Atlantic Capes alleged violations of the Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1891d, invoking the district court's jurisdiction under, inter alia, 16 U.S.C. § 1855(f). On July 13, 2006, the Massachusetts district court ordered the case transferred to the Eastern District of North Carolina, where it was referenced as No. 2:06-cv-00024.

12

By its October 2006 <u>Atlantic Capes</u> Order, the district court in North Carolina disposed of three pending motions that "ultimately turn[ed] upon a single issue:  the legal status of the Limited Access Permits."  October 2006 <u>Atlantic Capes</u> Order 4.  In so doing, the court recognized that, by its September 2006 Clarification Order in the original foreclosure action, it had "decided this issue already, . . . holding that the [Limited Access Permits] were not among the legal rights targeted by Caterpillar[]" in the original foreclosure action and, thus, should have remained with Atlantic Capes.  <u>Id.</u>  Accordingly, the court dismissed as moot the three pending motions, and reiterated its directive to the NMFS "to restore the transfer of the Limited Access Permits from Site Clearance I to Atlantic Capes."  <u>Id.</u>  On November 17, 2006, Capt. Dylan noted an appeal from the interlocutory October 2006 <u>Atlantic Capes</u> Order.


II.

We consolidated these appeals by order of January 3, 2007. Capt. Dylan maintains that we possess jurisdiction under both 28 U.S.C. § 1291 (jurisdiction over appeals from "final decisions of the district courts") and 28 U.S.C. § 1292(a)(3) (jurisdiction over appeals from "[i]nterlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed").  We recognize that we possess

§ 1292(a)(3) jurisdiction in No. 06-2142 (concerning the September 2006 Clarification Order in the original foreclosure action). Our jurisdiction is in doubt, however, with respect to No. 06-2222 (relating to the October 2006 Atlantic Capes Order). That is, it does not appear that the October 2006 Atlantic Capes Order constitutes an appealable "final decision[]" under § 1291 or an appealable "[i]nterlocutory decree[]" in an "admiralty case[]" within the meaning of § 1292(a)(3). In any event, in light of our affirmance in No. 06-2142 (which we explain below), No. 06-2222 is moot and dismissed for that reason.

III.

Relevant to No. 06-2142, Capt. Dylan challenges the September 2006 Clarification Order on several grounds.[7] The key issue before us is whether the district court was authorized under Federal Rule of Civil Procedure 60(a) to clarify its prior foreclosure-related orders as it did. Our review of the Rule 60(a) issue is for abuse of discretion. See Kocher v. Dow Chem. Co., 132 F.3d 1225, 1229 (8th Cir. 1997). Under the version of Rule 60(a) in effect at the time of the September 2006 Clarification Order, "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected

---

[7]Notably, both Atlantic Capes and Caterpillar are designated as appellees, but Caterpillar has waived the filing of a brief and adopted the brief of Atlantic Capes.

by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."[8]  As we have recognized, Rule 60(a) is properly utilized "to perform a completely ministerial task" (such as "making a judgment more specific in the face of an original omission"), but not to "revisit the merits of the question" or "reconsider[] the matter."  Kosnoski v. Howley, 33 F.3d 376, 379 (4th Cir. 1994) (internal quotation marks omitted).

By its September 2006 Clarification Order, the district court relied on Rule 60(a) simply to specify that its prior foreclosure-related orders excluded the Limited Access Permits from the arrest and sale of The F/V Site Clearance I — a necessary clarification in view of the NMFS's misinterpretation of the prior orders and consequent decision that the Limited Access Permits belonged with Site Clearance I.  The court's exclusion of the Limited Access Permits from the arrest and sale of Site Clearance I was entirely consistent with the understanding of Caterpillar and the defendants in the foreclosure action at the time the prior orders were entered.  Accordingly, it was perfectly within the court's authority to perform the "ministerial task" of clarifying its prior

_____

[8]Rule 60(a) was amended as part of the general restyling of the Civil Rules, effective December 1, 2007, and now provides in pertinent part as follows:  "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."

orders to reflect that shared understanding.  Cf. Kosnoski, 33 F.3d at 379 (affirming court's use of Rule 60(a) to specify amount of interest previously awarded, where "both parties understood that interest had been awarded" and the rate and time frame for computation, leaving as "[t]he court's only task . . . to do the calculation and make the amount official").  Indeed, it would have been impossible for the court to "revisit" or "reconsider" the status of the Limited Access Permits in its September 2006 Clarification Order, because that issue first came before the court only after Capt. Dylan latched onto the use of the general term "fishing permits" in the court's prior orders to argue that the Limited Access Permits were seized and sold with Site Clearance I (despite having notice from Caterpillar that the Limited Access Permits were never appurtenant to or part of its security interest in the vessel).  We therefore reject any notion that the court abused its discretion by relying on Rule 60(a) for its September 2006 Clarification Order.[9]

---

[9]Capt. Dylan further maintains on appeal that the district court lacked jurisdiction in the foreclosure action to issue the September 2006 Clarification Order, that Atlantic Capes had no standing to seek clarification of the court's prior foreclosure-related orders, and that Atlantic Capes's clarification request was time-barred.  We have carefully considered these contentions, and conclude that they are without merit.  We also find it unnecessary to reach any additional issues raised by Atlantic Capes in its response brief, e.g., whether Capt. Dylan is estopped from pursuing rights to the Limited Access Permits and whether Capt. Dylan's conduct risked a fraud on the court.

IV.

Pursuant to the foregoing, we affirm in No. 06-2142 and dismiss No. 06-2222.

<u>No. 06-2142 AFFIRMED</u>
<u>No. 06-2222 DISMISSED</u>