The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2024

## 2024COA10

**No. 23CA0004, *Stone Group Holdings v Ellison* — Remedies — Damages — Interest on Damages — Prejudgment Interest; Appeals — Final Appealable Order**

Answering a question left unresolved in *Grand County Custom Homebuilding, LLC v. Bell,* 148 P.3d 398 (Colo. App. 2006), a division of the court of appeals holds that an order granting prejudgment interest is reduced to a sum certain and is therefore final and appealable when the amount is calculable on the face of the order. Prejudgment interest is facially calculable when the order states (1) the amount of the judgment; (2) the prejudgment interest rate; and (3) the date when the interest began accruing.

Court of Appeals No. 23CA0004
Boulder County District Court No. 21CV30567
Honorable Dea M. Lindsey, Judge

Stone Group Holdings LLC, a Colorado limited liability company,

Plaintiff-Appellee,

v.

Todd Ellison and MC2 Boulder LLC, d/b/a Marquis Cannabis, a Colorado limited liability company,

Defendants-Appellants

and

D.J. Marcus

Attorney-Appellant.

## APPEAL DISMISSED

Division IV
Opinion by JUDGE GROVE
Navarro and Lum, JJ., concur

Announced January 25, 2024

Gard Law Firm, L.L.C., Jeffrey S. Gard, Austin Q. Hiatt, Boulder, Colorado, for Plaintiff-Appellee

Ogborn Mihm, LLP, D.J. Marcus, Denver, Colorado, for Defendants-Appellants and Attorney-Appellant

¶ 1    In this dispute over a failed investment in a marijuana business, defendants, Todd Ellison and MC2 Boulder LLC, d/b/a Marquis Cannabis (MC2), and their attorney, D.J. Marcus, appeal three separate district court orders that (1) granted summary judgment to plaintiff, Stone Group Holdings LLC, on its breach of contract claim; (2) awarded attorney fees based on fee-shifting language in that contract; and (3) sanctioned Ellison, MC2, and Marcus for failing to disclose certain information during discovery. We conclude that the notice of appeal was untimely and therefore dismiss the appeal for lack of jurisdiction.

## I.    Background

¶ 2    MC2 was a licensed marijuana business whose principals, Ellison and Ryan Quinn, agreed to sell two-thirds of their company to Stone Group.  Under the terms of the parties' contract, which was executed on April 24, 2020, Ellison and Quinn were to apply for a change of ownership once they received Stone Group's payment of $175,000.  Stone Group wired that amount four days after the parties signed the contract, but no transfer of ownership ever occurred.

¶ 3      Six months later, Stone Group filed a complaint alleging breach of contract against Ellison and Quinn and unjust enrichment against all three defendants.  Quinn never responded to the complaint, and the district court entered a default judgment against him.  Stone Group then moved for summary judgment against Ellison and MC2 on its unjust enrichment claim.  They did not respond to the motion, so on April 11, 2022, the district court granted it and ordered Ellison and MC2 to pay Stone Group "$175,000 plus statutory interest, with interest commencing on April 24, 2020."

¶ 4      Shortly thereafter, Stone Group filed a second motion for partial summary judgment, this time on the breach of contract claim.  The motion sought to compel all three defendants to follow through on the contractual term that required them to transfer two-thirds of the company to Stone Group.

¶ 5      While this motion was pending, Stone Group learned that, several months earlier, MC2 had missed the deadline for renewal of its marijuana license, rendering the company valueless once its prior license expired.  Stone Group sought sanctions against

Ellison, MC2, and its attorney (Marcus) for failing to disclose this development in discovery.

¶ 6     On May 18, 2022, the district court granted the motion for partial summary judgment but declined to award specific performance or other contractual damages because it found that "rescission of the [c]ontract essentially occurred" when, in the first partial summary judgment order, it ordered the return of the $175,000 that Stone Group had paid. However, relying on the contract's fee-shifting provision, the court awarded Stone Group its attorney fees stemming from the litigation of the contract claim and instructed Stone Group to submit an affidavit in support of its fee request within fourteen days.

¶ 7     On May 26, 2022, the court granted Stone Group's motion for discovery sanctions and awarded it attorney fees from the time that the defendants knew the late licensure application had been denied to the date of the order — a period of approximately four months. The court again instructed Stone Group to submit an affidavit reflecting its attorney fees incurred during that period and, on June 8, 2022, clarified that the sanctions were imposed jointly and severally against Ellison, MC2, and Marcus.

3

¶ 8    Also on June 8, 2022, the parties filed a stipulated motion for dismissal of the defendants' counterclaims and requested that the trial be vacated. The district court granted the motion the same day.

¶ 9    In an order issued on June 21, 2022, the court "award[ed] attorney fees in favor of [p]laintiff and against [Ellison and MC2] in the amount of $16,000.00 related to the prosecution of the breach of contract claim." The order made no reference to prejudgment or postjudgment interest.

¶ 10   Litigation over the attorney fee award and the proper amount of sanctions continued. After a hearing, the court ordered the following on October 11, 2022:

- "[Ellison, MC2, and Marcus] shall pay Plaintiff $16,000 in damages related to Plaintiff's litigation of their breach of contract claim." Importantly, the court's June 21 order applying the fee-shifting provision of the contract had only awarded fees against Ellison and MC2. We are unable to discern from the record why the October 11 order added the defendants' counsel to the fee award arising from the breach of contract claim.

4

- "[Ellison, MC2, and Marcus] shall pay Plaintiff $6,000 in damages [as a discovery sanction] related to [the] violation of C.R.C.P. Rules 11 and 26."
- "The Court reiterates its finding in its June 8, 2022 order that sanctions are imposed jointly and severally against [Ellison, MC2,] and their counsel."

¶ 11    Shortly thereafter, Stone Group filed a motion requesting that "final judgment be entered in the present matter." (In its reply brief, Stone Group explained that it filed the motion "so that plaintiff could begin the collections process.") Stone Group requested the entry of judgment in the following amounts:

- $215,033.65 owed jointly and severally by Ellison and MC2 on the unjust enrichment claim, which appears to be comprised of the $175,000 judgment and accrued interest, plus a previous discovery sanction of $2,629.65 and accompanying interest on that amount;

- $16,441.86 owed jointly and severally by Ellison, MC2, and Marcus on the attorney fee award under the contract, comprised of the $16,000 judgment plus accrued interest; and

5

- $6,000 owed jointly and severally by Ellison, MC2, and Marcus for discovery sanctions.

¶ 12    On November 15, 2022, the court granted Stone Group's motion by signing the proposed order that had been submitted together with the motion.

¶ 13    Ellison, MC2, and Marcus filed their notice of appeal on January 3, 2023 — forty-nine days after the order issued on November 15, 2022.

## II.    Timeliness

¶ 14    Although Ellison, MC2, and Marcus seek appellate review of three different and separately appealable judgments — the merits ruling on Stone Group's breach of contract claim, the attorney fee award arising from the contract's fee-shifting provision, and the $6,000 discovery sanction — they filed only a single notice of appeal forty-nine days after the district court ostensibly entered "final judgment" on those claims.  As we explain below, however, the court's order entering "final judgment" was superfluous because each of these issues had already been fully and finally resolved weeks or months earlier.

## A. Standard of Review and Principles of Law

¶ 15　　Before reaching the merits of an appeal, we must first determine whether we have jurisdiction. *Atherton v. Brohl*, 2015 COA 59, ¶¶ 7-8. Considering the question de novo, *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 33, we conclude that we do not have jurisdiction over any aspect of this appeal because it was not timely filed.

¶ 16　　Appellate jurisdiction is limited by several rules, two of which are relevant to our analysis. First, a final judgment or order is a prerequisite to appellate review. § 13-4-102(1), C.R.S. 2023; C.A.R. 1(a)(1); *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14. Second, the notice of appeal must be timely; here, the applicable rule required filing "within 49 days after entry of the judgment, decree, or order being appealed." C.A.R. 4(a)(1).[1]

---

[1] This deadline can be extended by a timely filed C.R.C.P. 59 motion. *See Amada Fam. Ltd. P'ship v. Pomeroy*, 2021 COA 73, ¶ 73. In addition, C.A.R. 4(a)(4) provides, "Upon a showing of excusable neglect, the appellate court may extend the time to file the notice of appeal for a period not to exceed 35 days after the time prescribed by [C.A.R. 4(a)]." The defendants do not assert excusable neglect but instead argue only that their notice of appeal was timely.

¶ 17    Our jurisdiction over this appeal hinges on when the three orders at issue — the order on the second partial summary judgment motion, the order awarding fees under the fee-shifting provision in the contract, and the sanctions award — became final. "'[A]s a general rule, a judgment is final and therefore appealable if it disposes of the entire litigation on its merits, leaving nothing for the court to do but execute the judgment.'" *L.H.M. Corp.*, ¶ 14 (citation omitted).  But a final judgment need not necessarily be the last order that a court enters.  Indeed, courts frequently issue postjudgment administrative or ministerial orders; so long as they do not "affect[] rights or create[] liabilities not previously resolved by the adjudication of the merits," *Luster v. Brinkman*, 250 P.3d 664, 667 (Colo. App. 2010) (citation omitted), they do not affect finality of the judgment.  *See, e.g., Bainbridge, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 973 P.2d 684, 686 (Colo. App. 1998) (holding that an order adding mandatory postjudgment interest was unnecessary and did not affect or alter the underlying judgment).

¶ 18    To be considered final, a judgment or order must address both liability and damages, *Chavez v. Chavez*, 2020 COA 70, ¶ 28, and damages must be reduced to a sum certain.  *See, e.g., Grand Cnty.*

8

*Custom Homebuilding, LLC v. Bell*, 148 P.3d 398, 400-01 (Colo. App. 2006). Prejudgment interest is a component of a damages award and must also be "reduced to a sum certain" before an order is considered final. *Id.* at 401.

B. Relevant Orders

¶ 19 We must consider six separate orders to determine whether this appeal is timely:

- the April 11, 2022, order granting partial summary judgment to Stone Group on the unjust enrichment claim and awarding it "$175,000 plus statutory interest, with interest commencing on April 24, 2020";

- the May 18, 2022, order granting partial summary judgment to Stone Group on the contract claim and ruling that Stone Group was entitled to attorney fees under the contract's fee-shifting provision;

- the June 8, 2022, order granting the stipulated motion for dismissal of the defendants' counterclaims and vacating the trial;

9

- the June 21, 2022, order awarding $16,000 in attorney fees to Stone Group, to be paid by Ellison and MC2, under the contract's fee-shifting provision;

- the October 11, 2022, order that

  - reiterated that Stone Group was entitled to $16,000 in fees under the fee-shifting provision but ruled that Ellison, MC2, *and Marcus* were jointly and severally liable for that amount; and

  - sanctioned Ellison, MC2, and Marcus, jointly and severally, in the amount of $6,000 for discovery violations; and

- the November 15, 2022, order of final judgment that calculated accrued interest on, and added that interest to, the unjust enrichment and attorney fee awards, and also reiterated the $6,000 discovery sanction.

### C. Analysis

#### 1. Merits Ruling

¶ 20    Ellison and MC2 contend that the district court incorrectly granted summary judgment against them on the breach of contract claim because Stone Group elected an unjust enrichment remedy

and, by prevailing on that equitable claim, made contractual remedies unavailable. Because Ellison and MC2 did not file a timely appeal, however, we lack jurisdiction to review the court's grant of summary judgment.

> a. April 11 Partial Summary Judgment Order

¶ 21 We acknowledge that the April 11 partial summary judgment order adjudicating the unjust enrichment claim is not discussed extensively in the parties' briefs. Nonetheless, we address it first because it pertains to our jurisdiction. *See People v. S.X.G.*, 2012 CO 5, ¶ 9.

¶ 22 Standing on its own, the April 11 order was not final because, as a partial summary judgment order, it did not dispose of the entire litigation on the merits. *See L.H.M. Corp.*, ¶ 14. But given the subsequent procedural history of this case, the order's award of prejudgment interest dating back to April 24, 2020, is nonetheless central to our analysis.

¶ 23 In *Bell*, a division of this court considered whether prejudgment interest is a component of damages. It concluded that it is, and, turning to the impact of that holding on finality, the division held that "a judgment awarding prejudgment interest is not

11

final until the amount of such interest is reduced to a sum certain." *Bell*, 148 P.3d at 401. The division then considered the meaning of "sum certain," observing that "some courts in other jurisdictions have held that where a sum certain can be calculated from the face of the judgment, it is final for purposes of appeal." *Id.* The opinion did not reach that question, however, because under the circumstances of the case, "the amount of prejudgment interest [was] not so easily calculable from the face of the . . . judgment." *Id.* at 402.

¶ 24 As best we can tell, every jurisdiction that has considered this question has concluded that prejudgment interest is reduced to a sum certain when the interest can be calculated from the face of the order through purely ministerial or mechanical means. For example, in *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1064 (7th Cir. 1992), the Seventh Circuit held that a judgment was final because the parties knew the interest rate and both the start and end date of interest accrual based on the controlling contractual provision. In a similar case arising under West Virginia law, the Fourth Circuit held that an order was final and a party's motion to clarify the amount of prejudgment interest

12

was not a motion to amend judgment because the amount of prejudgment interest was of a "ministerial nature" and was "fixed at the time of the entry of judgment" because the parties knew (1) that interest had been awarded; (2) the statutory interest rate; and (3) the timeframe for the computation. *Kosnoski v. Howley*, 33 F.3d 376, 379 (4th Cir. 1994). The Fifth and Eleventh Circuits have endorsed similar approaches. *See U.S. Sec. & Exch. Comm'n v. Carrillo*, 325 F.3d 1268, 1272 (11th Cir. 2003) ("[I]f the judgment amount, the prejudgment interest rate, and the date from which prejudgment interest accrues have been established . . . the court's failure to calculate the precise amount of prejudgment interest does not prevent the court's order from constituting a final judgment . . . ."); *Heck v. Triche*, 775 F.3d 265, 277 (5th Cir. 2014) (citing *Carrillo* with approval); *cf. Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 857 F.3d 1347, 1351 (Fed. Cir. 2017) (dismissing an appeal for lack of finality because "[t]he district court never resolved the parties' dispute regarding the date from which to begin calculating prejudgment interest or set the amount of prejudgment interest to be awarded" to the prevailing party).

¶ 25    For three reasons, we agree with the approach taken in these cases. First, it is implicit in the analysis of *Luster*, 250 P.3d at 666, which concluded that once an order exists from which prejudgment interest is facially calculable, any subsequent order stating the lump sum owed does not affect the substantive rights of either party and is thus ministerial. Instead, it is a matter of simple arithmetic — rendering the act of announcing the lump sum a ministerial act akin to that of announcing the lump sum of mandatory postjudgment interest. *See Bainbridge*, 973 P.2d at 686. Second, it promotes judicial economy by removing an unnecessary step of judicial involvement. Third, it allows the prevailing party to begin the collection process earlier.

¶ 26    Therefore, addressing the question that the *Bell* division left unresolved, we hold that, if an order announces (1) the amount of the judgment; (2) the interest rate; and (3) the date on which accrual of prejudgment interest begins, then the amount of prejudgment interest has been reduced to a sum certain as of the date of the order. Applying that test here, we conclude that the April 11 order reduced prejudgment interest on the unjust enrichment claim to a sum certain because it stated (1) the amount

14

of the judgment; (2) the interest rate; and (3) the date on which accrual began. Once final judgment was entered on June 8, the amount was easily calculable.

¶ 27    It follows that the April 11 order would have been immediately appealable had it resolved all of the issues in the case. It did not, however, because it only granted partial summary judgment to Stone Group. But importantly, because prejudgment interest could be calculated from the face of the April 11 order, it did not *prevent* the judgment from becoming final once the remaining issues were resolved. Thus, as we explain next, once the district court granted summary judgment on Stone Group's breach of contract claim and the counterclaims were dismissed, the judgment was final notwithstanding the court's subsequent October 11 and November 15 orders reiterating the award and declaring the exact amount of prejudgment interest.

### b.    May 18 Partial Summary Judgment Order and Stipulated Dismissal of Counterclaims

¶ 28    On May 18, 2022, the district court granted Stone Group's second motion for partial summary judgment. The court ruled that Ellison and MC2 had breached the contract but declined to order

specific performance or grant money damages under the contract because it found "that for the purposes of further damages, rescission of the [c]ontract essentially occurred" when it granted summary judgment on Stone Group's unjust enrichment claim.

¶ 29     Although this order resolved the merits of Stone Group's claims, it was not final because it did not resolve the counterclaims raised by Ellison and MC2. Once those counterclaims were dismissed pursuant to the parties' stipulation on June 8, 2022, the merits judgment was final, and any appeal was due within forty-nine days of that date. (The fact that the court had determined that Stone Group was also entitled to attorney fees under the contract had no impact on the finality of the merits ruling. *See L.H.M. Corp.*, ¶ 23 ("[A] judgment on the merits is final and appealable notwithstanding an unresolved issue of attorney fees.").) But Ellison and MC2 did not file their appeal until January 3, 2023. It is therefore untimely, and we do not have jurisdiction to review the merits judgment.

### 2.     Attorney Fees

¶ 30     In a related argument, Ellison, MC2, and Marcus contend that the court erred by granting attorney fees pursuant to the fee-

shifting provision of the contract because the contract was effectively rescinded by the court's order granting Stone Group's claim for unjust enrichment. We conclude that the appeal of this order was also untimely.

¶ 31 "[A]n award of attorney fees is distinct and separately appealable from the judgment on the merits." *Kennedy v. Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo. App. 2003). That remains true whether a fee award is denominated as costs or damages. *L.H.M. Corp.*, ¶¶ 25-28.

¶ 32 In its May 18 order granting Stone Group's second motion for partial summary judgment, the court found that Stone Group was entitled to attorney fees under the fee-shifting language in the contract, and on June 21, 2022, the court reduced that order to a sum certain by awarding $16,000 in attorney fees to Stone Group, to be paid by Ellison and MC2. Then, in the October 11 order, the court added Marcus to this $16,000 award, stating that he was jointly and severally liable for that amount along with Ellison and MC2.

¶ 33 Ellison, MC2, and Marcus contend that the court erred by awarding attorney fees under the fee-shifting provision of the

contract because it had already effectively declared the contract rescinded when it granted Stone Group's motion for summary judgment on its unjust enrichment claim. If it were timely, this argument would have some force. *See Kennedy*, 80 P.3d at 930-31 ("Once [the plaintiffs] elected the remedy of rescission and it was granted by the court, the option of obtaining the benefits of a provision in the rescinded contract was no longer available to them."). But we do not have jurisdiction to review it because Ellison and MC2 did not appeal it within forty-nine days of when it became final on June 21, 2022. Instead, the notice of appeal was filed on January 3, 2023.

¶ 34     Because the June 21 order reduced the attorney fee award to a sum certain, the court's subsequent orders restating that amount and adding interest to it were superfluous and did not change the date that it became final. *See Bainbridge*, 973 P.2d at 686 ("[A] judgment creditor who falls within the coverage of a mandatory post-judgment interest statute need not obtain an additional judgment (or a modification of a previous judgment) specifying that entitlement.").

¶ 35     That said, we acknowledge that the October 11 order appears to have sua sponte added Marcus as a judgment debtor on the $16,000 attorney fee award.  We have been unable to find any explanation for this apparent amendment to the judgment in the record, and we observe that, under C.R.C.P. 59(c)(4), the district court had only fourteen days after June 21, 2022, to order an amendment of its judgment on its own initiative.  *See Koch v. Dist. Ct.*, 948 P.2d 4, 7-8 (Colo. 1997) ("C.R.C.P. 59(c) allows the court to order a new trial sua sponte.  However, the court must act within the time allowed the parties because at the end of this period, the district court no longer has jurisdiction to grant post-trial relief under C.R.C.P. 59.") (footnote omitted).  Nonetheless, even if the district court had lost jurisdiction to amend its judgment to add Marcus to the fee award by the time it issued its October 11 order, we cannot review that aspect of the court's judgment on appeal because Marcus did not appeal it within forty-nine days of that date.

### 3.     Sanctions Order

¶ 36     Finally, we consider the timeliness of the appeal of the sanctions order.

19

¶ 37 The October 11 order announced sanctions in the amount of $6,000. Because the order was reduced to a sum certain on that date, the court's November 15 order entering "final judgment" was superfluous. Ellison, MC2, and Marcus filed their notice of appeal more than forty-nine days later, on January 3, 2023. Their appeal was therefore untimely, and we lack jurisdiction over it.

¶ 38 In summary, the merits ruling was final on June 8, 2022. The attorney fee award was final as to Ellison and MC2 on June 21, 2022, and as to Marcus on October 11, 2022. And the sanctions award was final on October 11, 2022. Each of these three orders was separately appealable, and each appeal had to be filed within forty-nine days of the date that the underlying order became final. Because none of the appeals was filed before its respective deadline, we lack jurisdiction to consider them on the merits and must dismiss the appeal.

### III. Appellate Attorney Fees

¶ 39 Stone Group requests an award of appellate attorney fees, arguing that the appeal is frivolous because we lack jurisdiction or, in the alternative, that the fee-shifting provision of the contract

requires the losing party to cover the prevailing party's attorney fees on appeal. We decline to award fees.

¶ 40 An appeal is frivolous as filed if "there are no legitimately appealable issues because the judgment below 'was so plainly correct and the legal authority contrary to the appellant's position so clear.'" *Calvert v. Mayberry*, 2019 CO 23, ¶ 45 (citation omitted). Likewise, an appeal is frivolous as argued if a party commits misconduct in the course of arguing the appeal. *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006).

¶ 41 It appears that both parties misunderstood finality in this case, as demonstrated by Stone Group's unnecessary request for the court to enter "final judgment" well after each of the appealed orders had become final. Given this procedural history, we cannot conclude that the late appeal was frivolous. Likewise, Stone Group does not allege any misconduct during the appellate proceedings, so the appeal is not frivolous as argued.

¶ 42 We also decline to award appellate attorney fees to Stone Group based on the contract's fee-shifting provision. *See Kennedy*, 80 P.3d at 930-31. Stone Group elected to pursue an unjust enrichment claim, and after it prevailed on that claim, the district

court found that "for the purposes of further damages, rescission of the [c]ontract essentially occurred."  Once the contract was rescinded, Stone Group was no longer able to receive the benefit of the fee-shifting provision.  *See id.*  Accordingly, we deny Stone Group's request for appellate attorney fees.

## IV.     Disposition

¶ 43     We dismiss the appeal and deny the request for appellate attorney fees.

JUDGE NAVARRO and JUDGE LUM concur.